Receipt number AUSFCC-11162749

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ARBUTUS BIOPHARMA CORPORATION )
and GENEVANT SCIENCES GmbH, )
)       No. _26-446 C_
Plaintiffs, )
)
v. )
)
THE UNITED STATES, )
)
Defendant. )
)

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Arbutus Biopharma Corporation ("Arbutus") and Genevant Sciences GmbH

("Genevant") file this Complaint seeking patent infringement damages against the United States

pursuant to 28 U.S.C. § 1498 and allege the following:

**INTRODUCTION & PRELIMINARY STATEMENT**

1.      The impact of the COVID-19 pandemic, one of the greatest public health

challenges in modern history, would be immeasurably worse but for the rapid, widespread

availability of cutting-edge mRNA-based vaccines like Moderna's.  Moderna brought its vaccine

from lab bench to arms in record speed.  That unprecedented accomplishment was made possible

by Moderna's use of breakthrough technology Arbutus had already created and patented—a

revolutionary lipid nanoparticle ("LNP") delivery platform that took the scientists of Arbutus

years of painstaking work to develop and refine.  Moderna was well aware of Arbutus's LNP

patents and licensed them for other product programs, but it chose not to do so for its COVID-19

vaccine.  Instead, it attempted to invalidate several of the patents before the United States Patent

and Trademark Office, and when those efforts largely failed, Moderna simply used the patented

technology without paying for it or even asking for a license. Plaintiffs seek fair compensation for the use of patented technology they developed with great effort and at great expense, without which Moderna's COVID-19 vaccine would not have been successful.

2.      Medicines using messenger ribonucleic acid (or "mRNA") technology, like Moderna's COVID-19 vaccine, rely on synthetic mRNA that enters the body's cells and instructs them to make proteins they would not necessarily make on their own. Moderna's COVID-19 vaccine, in particular, uses mRNA to cause cells to make a small piece of the virus that causes COVID-19 called the "spike protein." That small piece, which is harmless in isolation, prompts the body's immune system to produce antibodies that will recognize the spike protein if it is encountered in the future and destroy it. In this way, the vaccine equips a person's body ahead of time with antibodies to fight the COVID-19 virus if that person experiences a subsequent exposure.

3.      Ever since the vast potential for mRNA-based vaccines and other mRNA-based medicines began to catch the attention of scientists more than two decades ago, the biggest technological hurdle to developing and deploying them has been devising a safe and effective way to deliver the mRNA to the cell. Without adequate protection, mRNA quickly degrades in the body. For mRNA vaccines like Moderna's to work, they must incorporate a mechanism for protecting the fragile mRNA, delivering it through cell membranes, and then releasing it inside the cell. In the words of one Nobel Prize winning scientist, the secret for making RNA-based products work has always been "delivery, delivery, delivery."[1]

---

[1] Erika Check, "RNA to the Rescue," *Nature* 425:10-12 (2003), *available at* https://www.nature.com/articles/425010a.

4.      Having vexed experts in the field for years, that problem eventually found a solution in the innovative research of Arbutus scientists.  Their solution was ingenious: microscopic particles built from four carefully selected types of fat-like molecules, so small that they are measured in nanometers but still stable enough to shelter and protect an RNA molecule on a voyage through the human body to a target cell, and then through the target cell's membrane, before finally releasing the RNA.  These tiny fat-like particles are called "lipid nanoparticles," or "LNPs."  The United States Patent and Trademark Office has granted Arbutus several patents for its groundbreaking LNP technologies.

5.      LNPs identified through Arbutus's pioneering work have been described as "crucial" to Moderna's COVID-19 vaccine, the first mRNA product the company was able to commercialize and the keystone of its financial success.[2]  Without the LNPs Arbutus invented to safeguard the mRNA and deliver it into cells, the mRNA in Moderna's vaccine would degrade before ever reaching the cells it needs to enter and the vaccine would not work.  As another Nobel Prize winning scientist explained: "A lot of credit goes to Ian MacLachlan for the LNP," referring to one of the lead scientists at Arbutus's predecessors and an inventor on several of Arbutus's patents related to LNP technology, including the patents asserted here.[3]

6.      Moderna has long been aware of Arbutus's LNP intellectual property and its importance as a component of mRNA-based vaccines and other mRNA-based medicines. Several years before the pandemic, Moderna obtained licenses to use Arbutus's LNP patents for

---

[2] Nathan Vardi, "Moderna's Mysterious Coronavirus Vaccine Delivery System," *Forbes.com*, July 29, 2020, *available at* https://www.forbes.com/sites/nathanvardi/2020/07/29/modernas-mysterious-coronavirus-vaccine-delivery-system/.

[3] Nathan Vardi, "Covid's Forgotten Hero:  The Untold Story of the Scientist whose Breakthrough Made the Vaccines Possible, Aug. 17, 2021, *available at* https://www.forbes.com/sites/nathanvardi/2021/08/17/covids-forgotten-hero-the-untold-story-of-the-scientist-whose-breakthrough-made-the-vaccines-possible.

certain mRNA products directed to specific viral targets.  But those licenses did not grant

Moderna rights to use the technology for products targeting SARS-CoV-2, the virus that causes

COVID-19 and is targeted by the vaccines at issue here.  Before it decided to use Arbutus's

proven and patented technology as a crucial part of its COVID-19 vaccine, Moderna did not ask

for a license to do so.  Instead, it tried to convince the United States Patent and Trademark Office

and, later, the United States Court of Appeals for the Federal Circuit to cancel several of

Arbutus's LNP-related patents.  But despite the failure of Moderna's attempts to eliminate

Arbutus's patents and despite Plaintiffs' efforts to resolve this dispute without litigation,

Moderna remained unwilling to pay for its use of Arbutus's technology in a vaccine that earned

Moderna many billions of dollars in profits.

7.    Moderna's intransigence forced Arbutus and Genevant, a company spearheaded

by former Arbutus scientists, to bring a patent infringement action against Moderna (the

"Moderna Action").[4]  Plaintiffs are proud that their LNP technology had such a profound impact

on the heroic fight against COVID-19 and did not seek to impede that fight during the pandemic

by obtaining an injunction or otherwise inhibiting the production or distribution of Moderna's

COVID-19 vaccine, including boosters.  All Plaintiffs seek is the compensation due to them

under the patent laws of the United States and as a matter of simple fairness.

8.    Moderna sought to dismiss Arbutus and Genevant's action for certain sales that

Moderna made to the United States Government.  Moderna argued that the United States

Government, and not Moderna, is responsible for paying damages for Moderna's infringing

doses of its COVID-19 vaccine sold to the United States Government under Moderna's August

2020 Contract No. W911QY20C0100 with the United States Government (the "C-100

---

[4] *See Arbutus Biopharma Corp. v. Moderna Inc.*, No. 22-252, D.I. 1 (D. Del. Feb. 28, 2022).

Contract").  The United States also filed a Statement of Interest in the Moderna Action, asserting that the "[C-100] contract was "for the Government" and therefore "for the benefit of the Government" and that the United States "granted [Moderna] its 'authorization and consent' to manufacture and use inventions covered by United States patents under [the C-100 contract]."[5] So, the United States asserted that the C-100 Contract had "transfer[red] to the United States any liability for the manufacture or use of the inventions claimed in the Patents-in-Suit."[6]  Per the United States, Plaintiffs should be "limited to pursuing a claim against the United States in the Court of Federal Claims pursuant to 28 U.S.C. § 1498," which "provides the exclusive remedy for any infringement occurring in the course of Moderna's performance of the [C-100] Contract."[7]

9.     The Delaware district court denied Moderna's motion, concluding that Moderna had not met its burden of showing that 28 U.S.C. § 1498(a) applied to Moderna's sales under this contract.[8]

10.     The parties also cross-moved for summary judgment as to 28 U.S.C. § 1498(a). In their motion, Arbutus and Genevant argued that Moderna's sales under the C-100 Contract are not covered by 28 U.S.C. § 1498(a) and that damages for infringement should be obtained from Moderna directly, rather than from the United States Government.[9]

11.     On February 2, 2026, the Delaware district court granted in part and denied in part the parties' respective cross-motions for summary judgment as to the applicability of § 1498(a).

---

[5] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[6] *Id.* at 2.
[7] *Id.*
[8] *Arbutus*, No. 22-252, D.I. 31 (D. Del. Nov. 2, 2022); *Arbutus*, No. 22-252, D.I. 64 (D. Del. Mar. 10, 2023).
[9] *See Arbutus*, No. 22-252, D.I. 508 at 7–18 (D. Del. Aug. 1, 2025); *Arbutus*, No. 22-252, D.I. 564 at 1–17 (D. Del. Aug. 29, 2025).

The court granted Moderna's motion with respect to the doses that went directly to United States Government employees and granted Plaintiffs' motion with respect to the doses that did not go directly to United States Government employees.[10]

12.      On March 4, 2026, the Delaware district court entered a Consent Judgment, resolving the district court proceedings in the Moderna Action.  The Delaware district court entered judgments of infringement as to Arbutus's U.S. Patent Nos. 8,492,359; 9,364,435; 9,504,651; and 11,141,378.[11]  The court further entered judgments of no invalidity as to those patents, based solely on the disclosures of the patents' specifications, the relevant priority dates, and the parties' contentions and expert opinions, the specific asserted relevant prior art, the specific prior related proceedings, and the asserted claims in the patents.[12]  With respect to Moderna's affirmative defense under 28 U.S.C. § 1498, the court entered judgment against Moderna for the doses of its vaccine that did not go directly to United States Government employees and entered judgment in Moderna's favor with respect to the 6,244,340 doses of Moderna's COVID-19 vaccine sold pursuant to the C-100 Contract that went directly to United States Government employees (such 6,244,340 doses, the "Government Employee Doses").[13] The parties further waived all rights to appeal, except Moderna reserved the right to appeal the Delaware district court's adjudication concerning the applicability of 28 U.S.C § 1498(a) to Moderna's sales under the C-100 Contract.[14]

13.      Plaintiffs file this Complaint against the United States at this time to seek reasonable and entire compensation for the Government Employee Doses and to preserve their

---

[10] *Arbutus*, No. 22-252, D.I. 698 ¶¶ 1(a)(i), 1(b), 3(a) (D. Del. Feb. 2, 2026).
[11] *Arbutus*, No. 22-252, D.I. 758 ¶ 2(a) (D. Del. Mar. 4, 2026).
[12] *Id.* ¶ 2(b).
[13] *Id.* ¶¶ 3(a)–(b).
[14] *Id.* ¶ 3(c).

right to seek damages from the United States, if necessary, prior to the running of any applicable statute of limitations for any doses sold pursuant to the C-100 Contract that are ultimately deemed to be subject to 28 U.S.C. § 1498(a).  By filing this Complaint Plaintiffs do not convey or imply that 28 U.S.C. § 1498(a) applies to any sales of Moderna's COVID-19 vaccine to the United States Government or that any damages for such sales should or must be obtained from the United States, rather than Moderna, except with respect to the Government Employee Doses. This Complaint is borne out of necessity at this time, in light of the positions that the United States and Moderna have taken in the Moderna Action, which may not be finally resolved on appeal before the time to file this Complaint has expired.

### NATURE OF THE ACTION

14.    This is a civil action against the United States under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*, and 28 U.S.C. § 1498, seeking Plaintiffs' reasonable and entire compensation for the infringing manufacture or use of Moderna's mRNA-1273 COVID-19 mRNA LNP vaccine product ("Moderna's COVID-19 vaccine") or any supplemental or booster COVID-19 mRNA LNP vaccine product (collectively, the "Accused Product"), which the United States contends is "for the government" and with its "authorization and consent."[15]

15.    As alleged herein, the manufacture or use of the Accused Product infringes one or more claims of the following patents relating to nucleic acid-lipid particles, compositions thereof, and their use to deliver nucleic acid-based medicines:  U.S. Patent Nos. 8,058,069 (Exhibit A), 8,492,359 (Exhibit B), 8,822,668 (Exhibit C), 9,364,435 (Exhibit D), 9,504,651 (Exhibit E), and 11,141,378 (Exhibit F) (collectively, the "Asserted Patents").  At all relevant times, Arbutus owned the Asserted Patents and licensed exclusive rights to sublicense, practice,

---

[15] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).

and sue for infringement of them to Genevant in certain fields of use that include the vaccine application at issue in this Complaint, with certain exceptions not relevant here (hereinafter, "Exclusive Rights").

## THE PARTIES

16.     Plaintiff Arbutus Biopharma Corporation is a corporation organized and existing under the laws of British Columbia, Canada, with its principal place of business at 701 Veterans Circle, Warminster, Pennsylvania, 18974.  The company's research and development efforts have included discovering, developing, and commercializing a cure for chronic hepatitis B virus, as well as drug discovery and development efforts for treating coronaviruses, including SARS-CoV-2, which causes COVID-19.  Arbutus had no more than 500 employees at any time during the five-year period preceding the use or manufacture alleged herein, or at any point since.

17.     Plaintiff Genevant Sciences GmbH is a company organized and existing under the laws of Switzerland, with its principal place of business at Viaduktstrasse 8, 4051 Basel, Switzerland.  Genevant is a technology-focused nucleic acid delivery solutions company with cutting-edge LNP platforms.  Genevant owns or licenses the industry's most important LNP intellectual property—that of Arbutus—and has decades of experience and expertise in nucleic acid drug delivery and development.  Genevant, together with its affiliated companies, maintains offices in Cambridge, Massachusetts, Vancouver, British Columbia, Canada, and Basel, Switzerland.  Genevant's mission is to utilize its LNP and other technologies to deliver innovative new medicines that use mRNA or other nucleic acids.  Genevant had no more than 500 employees at any time during the five-year period preceding the use or manufacture alleged herein, or at any point since.

18.    Defendant is the United States, acting through its various agencies, including but not limited to the Department of Defense ("DOD") and the Department of Health and Human Services ("HHS").

19.    Non-party Moderna, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 325 Binney Street, Cambridge, Massachusetts, 02142.  Moderna, Inc., itself and through its subsidiary ModernaTX, Inc., manufactures vaccines and other medicines for use throughout the United States.

20.    Non-party ModernaTX, Inc. is a wholly owned subsidiary of Moderna, Inc. (collectively, "Moderna").  ModernaTX, Inc. is also a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 325 Binney Street, Cambridge, Massachusetts, 02142.  ModernaTX, Inc. manufactures vaccines and other medicines for use throughout the United States.

## JURISDICTION AND VENUE

21.    This action seeks reasonable and entire compensation for use or manufacture for the United States, without license or lawful right, of inventions described and claimed in the Asserted Patents.

22.    The Government, through contractors that the Government contends were acting "for the Government" and with the "authorization and consent" of the Government,[16] including ModernaTx, Inc. and Moderna, Inc., has used or manufactured products that include each limitation of one or more claims of the Asserted Patents in a manner that would subject the Government to liability for direct patent infringement if the United States was a private party.

---

[16] *Id.*

9

23.     The Moderna Action does not alter this Court's jurisdiction to hear this case, as the Delaware district court has entered judgment in that action, there is no pending appeal from that action, and the United States was not a defendant in that action.

24.     Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1491 and 28 U.S.C. § 1498.

## BACKGROUND

### A.     How Vaccines Work

25.     Viruses are typically small packets of DNA or RNA.  If a virus enters a living host cell—for example, after being ingested, transmitted through bodily fluids, or inhaled through a person's mouth or nose—the virus's DNA or RNA hijacks the cell's machinery and instructs the cell to make copies of the virus.  These copies, often numbering into the millions, leave the infected cell and enter other cells where the process repeats.  Infected cells can be damaged or die while hosting the virus.  Left unchecked, the host organism itself can die.

26.     Although vaccines targeting viruses have different mechanisms of action, they traditionally work by injecting into the body a weakened or inactive form of the virus that is unable to cause infection, but nonetheless retains features of the infectious virus and can teach the immune system to recognize and attack the infectious virus if it invades in the future.

### B.     Nucleic Acid Medicines and Delivery Technologies

27.     Moderna's COVID-19 vaccine belongs to a new class of medicines that deliver nucleic acids into the cells of the body to treat diseases or, in the case of Moderna's COVID-19 vaccine, to trigger an immune response to protect a person from future infection.

28.     Nucleic acids are molecules that encode the genetic information essential to sustain all forms of life.  One type of nucleic acid is deoxyribonucleic acid, or "DNA," which is

10

found in our chromosomes.  In humans, each person (except identical twins) has a unique set of genetic information in the "genes" within his or her chromosomes.  Among other things, these genes spell out the instructions for producing proteins that make our cells and bodies function.

29.     In order to make the protein encoded by a particular gene, the cell first converts the genetic code in the gene's DNA into another type of nucleic acid known as messenger ribonucleic acid, or "mRNA."  mRNA is effectively a copy of the portion of DNA that the cell's protein-making machinery uses as a blueprint to assemble the protein encoded by the gene.

30.     Vaccines and other medicines using ribonucleic acid, or "RNA," technologies are an emerging frontier with the potential to revolutionize medicine.  RNA-based medicines can employ a type of RNA called small interfering RNA ("siRNA") to treat certain diseases by interfering with the expression of unwanted proteins to reduce the amounts produced—a process called RNA interference ("RNAi").  RNA-based medicines also can employ mRNA to cause or increase the production of certain proteins.  mRNA vaccines, for example, cause cells to express a protein (or a piece of a protein) that is normally found on a particular tumor or that is part of a particular virus.  The presence of that protein (or piece of a protein) teaches the body's immune system to recognize it if it is encountered in the future and destroy it.  These and other RNA-based medicines hold great promise for addressing many previously intractable diseases and, as in the present circumstances, new viruses that cause or threaten worldwide pandemics.

31.     Despite their promise, however, RNA-based medicines have been difficult to develop.  By their nature, RNA molecules are fragile.  Without adequate protection, RNA molecules are susceptible to degradation in the body, and, if and when they get to a cell, cannot cross the cell membrane to enter the cell.  For decades, the need for an effective delivery technology had been the most significant challenge in the development of RNA-based products.

11

In particular, without the means to protect mRNA and facilitate its entry into target cells, mRNA-based vaccines and other medicines have been ineffective.

32.     Indeed, functional RNA-based medicines eluded researchers until the pioneering work by Arbutus scientists, many now at Genevant companies, resulting in the discovery and development of the leading nucleic acid delivery technology in use today.  Decades ago, a group of ambitious research scientists working at a predecessor company to Arbutus began to tackle the nucleic acid delivery problem that had long stymied the field.  Years of tireless effort by these scientists resulted in a solution to the problem.  The solution was LNP technology that relies on fat-like molecules called lipids that encapsulate and protect nucleic acids like mRNA from degradation in the body and enable them to cross cell membranes.  Once inside a cell, the LNP releases the nucleic acid it encapsulates so that, in the case of an mRNA vaccine for example, the nucleic acid can express the protein it encodes.

33.     The lipid components of the Arbutus technology include: structural lipids, such as phospholipids and cholesterol; "cationic" (positive charge-bearing) lipids, including "ionizable" lipids that are positive charge-bearing at certain pH levels; and conjugated lipids, which are lipids attached to a polymer such as polyethyleneglycol ("PEG").  Arbutus scientists discovered that nucleic acid-lipid particles combining particular lipid components in particular ratios could achieve much more effective delivery of nucleic acids through cell membranes and into cells.

34.     These Arbutus scientists spent more than a decade researching and developing this nucleic acid-lipid delivery technology.  Their efforts led to the first FDA-approved RNA-based therapeutic in the form of a drug called Onpattro®, an RNAi treatment for a form of amyloidosis, a rare disease that causes certain proteins to accumulate in organs.  The company that developed Onpattro®, Alnylam Pharmaceuticals, did so under an LNP license from Arbutus

12

and received FDA approval in August 2018.  Building on this initial success, Arbutus has granted licenses to its LNP technology to other companies, and Genevant has entered into several LNP product development collaborations, some that were directed to COVID-19 and some to other diseases and disorders.  Several entities developing mRNA-LNP vaccines against COVID-19 have come to Genevant for a license to Arbutus's technology, including companies that produced promising candidates in clinical trials.  And Genevant's COVID-19 development collaborations included efforts to provide a vaccine to parts of the developing world.

**C.    The United States Awards Patents Recognizing Arbutus's Innovations**

35.    In recognition of Arbutus's extensive and groundbreaking research and development efforts, the United States Patent and Trademark Office has granted several families of patents claiming nucleic acid-lipid particles and lipid vesicles, as well as compositions and methods of using them.  The Asserted Patents are among them:

    a.  U.S. Patent No. 8,058,069, "Lipid Formulations for Nucleic Acid Delivery," issued on November 15, 2011 (the "'069 Patent").

    b.  U.S. Patent No. 8,492,359, "Lipid Formulations for Nucleic Acid Delivery," issued on July 23, 2013 (the "'359 Patent").

    c.  U.S. Patent No. 8,822,668, "Lipid Formulations for Nucleic Acid Delivery," issued on September 2, 2014 (the "'668 Patent").

    d.  U.S. Patent No. 9,364,435, "Lipid Formulations for Nucleic Acid Delivery," issued on June 14, 2016 (the "'435 Patent").

    e.  U.S. Patent No. 9,504,651, "Lipid Compositions for Nucleic Acid Delivery," issued on November 29, 2016 (the "'651 Patent").

f.  U.S. Patent No. 11,141,378, "Lipid Formulations for Nucleic Acid Delivery," issued on October 12, 2021 (the "'378 Patent").

36.    True and correct copies of the Asserted Patents are attached hereto as Exhibits A through F.  All are valid and enforceable under United States patent laws.  All are assigned to and owned by Arbutus, and, at all times since Arbutus and Genevant entered into a license agreement, Genevant has held Exclusive Rights to all of the Asserted Patents in various fields of use including the vaccine application at issue here.  Under the terms of the license, Genevant's Exclusive Rights include the right to sue for the infringement alleged in this Complaint.

**D.    Moderna's Knowledge of, and Background with, the Asserted Patents**

37.    Moderna has been on actual notice of Arbutus's patents since before its development of the Accused Product and has knowingly used Arbutus's technology as an essential component of its nucleic acid products and product candidates, including its COVID-19 vaccine.

38.    Years before the COVID-19 pandemic, Moderna recognized that Arbutus's LNP technology could fuel its own work in RNA-based vaccines and other medicines.  Accordingly, in or about May 2015, Moderna attempted to acquire rights to Arbutus's LNP delivery technology for four specific viral targets (none of which is COVID-19) through sublicenses from a Canadian company called Acuitas Therapeutics.  Although Acuitas had licensed Arbutus's LNP technology in 2012, its license agreement expressly limited Acuitas's ability to grant sublicenses.  That limitation prohibited Acuitas from granting the sublicense that it granted to Moderna.

39.    In August 2016, after learning of the Moderna-Acuitas sublicense agreements, Arbutus notified Acuitas of material breach.  In October 2016, Acuitas filed suit in the Supreme

14

Court of British Columbia seeking to prevent Arbutus from terminating the Arbutus-Acuitas agreement. Arbutus counterclaimed for a declaration that the license had been terminated and sought an injunction barring Acuitas from further sublicensing Arbutus's LNP technology.

40.    In February 2018, Arbutus and Acuitas settled their dispute. The settlement agreement provided that Acuitas no longer could use Arbutus's LNP technology, with the four specific sublicenses to Moderna for vaccines targeting specific viruses remaining in effect. SARS-CoV-2, the virus that causes COVID-19 and the target of the vaccine accused of infringement in this Complaint, was never among the sublicenses and is therefore not among the surviving sublicenses.

41.    Without a broad license to Arbutus's valuable LNP technology, and hoping to make unrestricted use of that technology without having to pay royalties, Moderna began filing *inter partes* review ("IPR") petitions requesting that the Patent and Trademark Office cancel certain of Arbutus's patents, including the '069 Patent and the '435 Patent asserted here.

42.    Moderna's first IPR petition, filed in February 2018, challenged Arbutus's U.S. Patent No. 9,404,127 ("the '127 Patent"), which, like the Asserted Patents, is directed to Arbutus's LNP technology. The Patent Trial and Appeal Board ("PTAB") ruled that all claims of the '127 Patent should be cancelled, and the United States Court of Appeals for the Federal Circuit affirmed that ruling in a March 2023 decision.

43.    Moderna's IPRs against the Asserted Patents were less successful. Its second IPR petition, filed in March 2018, ended with the PTAB rejecting Moderna's arguments challenging the validity of ten of the '435 Patent's twenty claims. Moderna challenged that ruling on appeal,

15

but in a December 2021 decision, the United States Court of Appeals for the Federal Circuit dismissed Moderna's appeal for lack of standing.[17]

44.     Moderna's third IPR petition, filed in January 2019, was even less successful. The PTAB completely rejected Moderna's challenge to all claims of the '069 Patent, and the United States Court of Appeals for the Federal Circuit affirmed that ruling in December 2021.

**E.     Moderna Designs Its COVID-19 Vaccine Over a Single Weekend Aided by the Unauthorized Use of Arbutus's LNP Technology**

45.     On January 10, 2020, with the novel SARS-CoV-2 virus quickly spreading around the world, scientists identified the virus's complete genetic sequence and posted it for free on the internet.  This public disclosure revealed the complete RNA sequence that encodes the virus's components, including its distinctive "spike protein."  With that information in the public domain, researchers around the world were able to begin designing vaccines to target the virus.

46.     Moderna was one of many companies that began work on a vaccine in earnest once the genetic sequence was published.  Moderna did so with the assistance and collaboration of agencies and individuals affiliated with the United States Government.  By January 13, 2020, the U.S. National Institutes of Health ("NIH") and Moderna's researchers had finalized the sequence for mRNA-1273, the Company's COVID-19 vaccine, which the NIH announced it would use as part of a Phase 1 study using the mRNA-1273 vaccine in response to COVID-19.[18] By February 24, 2020, Moderna had shipped the clinical batch to the NIH for use in its Phase 1

---

[17] Arbutus cross-appealed the PTAB's decision, challenging the invalidation of the ten claims of the '435 Patent that were not upheld.  On December 1, 2021, the Federal Circuit affirmed the PTAB's decision as to those claims.

[18] Form 8-K, Moderna, Moderna's Work on a Potential Vaccine Against COVID-19 (Mar. 16, 2020), *available at* https://www.sec.gov/Archives/edgar/data/1682852/000119312520074867/d884510dex991.htm.

clinical study.[19]  Then, on March 4, 2020, the U.S. Food and Drug Administration ("FDA")

completed its review of the Investigational New Drug application filed by the NIH for mRNA-

1273 and allowed the study to proceed to begin clinical trials.[20]  On March 16, 2020, the NIH

announced that the first participant in its Phase 1 study for mRNA-1273 was dosed, a total of 63

days from sequence selection to first human dosing.[21]

47.     Relying on Arbutus's LNP technology covered by the Asserted Patents, Moderna

was able to begin producing its COVID-19 vaccine *within just a few days* of the SARS-CoV-2

genomic sequence entering the public domain.  The design component of the effort was even

faster:  According to Moderna President Stephen Hoge, "[w]e did it in an hour, and it worked

brilliantly."[22]  Compared to the timelines of prior vaccine-development efforts, Moderna's

accomplishment was unprecedented.  In the words of Moderna's CEO Stéphane Bancel, "11

months since the DNA sequence of the virus became available, you will have two approved

mRNA vaccines, which has never happened before with any technology.  That is amazing."[23]

48.     The success of the NIH's clinical trial performed with Moderna's COVID-19

vaccine candidate was chronicled in an article first published online on June 11, 2020, by

individuals affiliated with Moderna and NIH.  According to this article—the "Moderna/NIH

preprint"—"the release of SARS-CoV-2 sequences triggered immediate rapid manufacturing of

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22]  "Stephen Hoge, MD '03: Turns out, designing a COVID vaccine was easy," UCSF Alumni, *available at* https://alumni.ucsf.edu/stories/stephen-hoge.

[23] Antonio Regalado, "'None of us were ready' to manufacture genetic vaccines for a billion people," MIT Technology Review (December 17, 2020), *available at* https://www.technologyreview.com/2020/12/17/1014989/moderna-vaccine-availability-stephane-bancel-ceo/.

an mRNA vaccine" by Moderna.[24]  Moderna "decide[d] on [the] mRNA-1273 sequence" on

January 13, 2020, just three days after the publication of the viral sequence, and "initiate[d]

cGMP production" the very next day, on January 14, 2020.[25]

49.     The United States, acting through its agencies, was integral to the development of

Moderna's COVID-19 vaccine.  The NIH conducted the Phase 1 clinical study to evaluate the

safety and immunogenicity of Moderna's vaccine targeting the SARS-CoV-2 virus.[26]  Further, in

April 2020, the United States entered into an agreement with Moderna for a commitment of up to

$483 million from the Biomedical Advanced Research and Development Authority ("BARDA"),

a division of the Office of the Assistant Secretary for Preparedness and Response within HHS, to

accelerate development of the Accused Product.[27]  This award from BARDA was used to fund

development of Moderna's COVID-19 vaccine to FDA licensure and the scale-up of Moderna's

manufacturing processes.[28]  In July 2020, BARDA increased its funding of Moderna's

development efforts with an additional commitment of up to $472 million.[29]

---

[24] "SARS-CoV-2 mRNA Vaccine Development Enabled by Prototype Pathogen Preparedness," bioRvix.org (June 11, 2020) *available at* https://www.biorxiv.org/content/10.1101/2020.06.11.145920v1.full.
[25] *Id.*
[26] Press Release, Moderna, Moderna Announces First Participant Dosed in NIH-led Phase 1 Study of mRNA Vaccine (mRNA-1273) Against Novel Coronavirus (May 16, 2020), available at https://feeds.issuerdirect.com/news-release.html?newsid=8937096890119000&symbol=MRNA.
[27] Press Release, Moderna, Moderna Announces Award from U.S. Government Agency BARDA for up to $483 Million to Accelerate Development of mRNA Vaccine (mRNA-1273) Against Novel Coronavirus (Apr. 16, 2020), *available at* https://feeds.issuerdirect.com/news-release.html?newsid=8247529005433483&symbol=MRNA.
[28] *Id.*
[29] Press Release, Moderna, Moderna Announces Expansion of BARDA Agreement to Support Larger Phase 3 Program for Vaccine (mRNA-1273) Against COVID-19 (July 26, 2020), *available at*  https://feeds.issuerdirect.com/news-release.html?newsid=4682080600979487&symbol=MRNA.

50.     Notwithstanding the funding and support that Moderna received from the United States Government, Moderna's COVID-19 vaccine could not have been developed, much less on a timeline unprecedented in human history, without Arbutus's proven and patented LNP delivery technology—technology that had transformed vaccine design from a years-long project into one that could be performed within an hour over a January weekend.

51.     Moderna's co-founder Robert Langer has been quoted as saying "I don't think people realized just how important the delivery systems are . . . ."[30]  LNPs are so crucial to Moderna's mRNA vaccines that Giuseppe Ciaramella, head of infectious diseases at Moderna from 2014 to 2018, called LNPs "the unsung hero of the whole thing,"[31] while Moderna CEO Stéphane Bancel stated in December 2020 that "[w]e always said it is . . . about developing the right delivery technology.  And this is something that takes years, not two weeks."[32]

52.     The Moderna/NIH preprint detailed Moderna's use of Arbutus's LNP technology and its infringement of the Asserted Patents during the development of its COVID-19 vaccine. The scientists who worked on the vaccine and contributed to the article explained that Moderna's COVID-19 vaccine used in this clinical trial was composed of mRNA encoding a modified version of the SARS-CoV-2 spike (S) protein that was synthesized, purified, "and encapsulated into lipid nanoparticles (LNP)," with a lipid molar ratio of "50:10:38.5:1.5 (ionizable lipid:DSPC:cholesterol:PEG-lipid)."  Specifically, the Moderna/NIH preprint explained that the product that Moderna used in these clinical trials was designed to include lipid particles

---

[30] Tim Loh, "Lipids Are Delivering the Vaccine Revolution," Bloomberg (March 6, 2021), *available at* https://www.bloomberg.com/news/newsletters/2021-03-06/lipids-are-delivering-the-vaccine-revolution.

[31] Ryan Cross, "Without these lipid shells, there would be no mRNA vaccines for COVID-19," C&EN (March 6, 2021), *available at* https://cen.acs.org/pharmaceuticals/drug-delivery/Without-lipid-shells-mRNA-vaccines/99/i8.

[32] Regalado, *supra* note 7.

comprising the following lipids in the following ratio: 50 mol % of an ionizable lipid that is cationic; 10 mol % of a phospholipid (DSPC); 38.5 mol % of cholesterol; and 1.5 mol % of a conjugated lipid that inhibits aggregation of particles (PEG-lipid).

53.    These components are within the ranges of, among other claims of the Asserted Patents, Claim 1 of Arbutus's '069 Patent, which recites a "nucleic acid-lipid particle comprising (a) a nucleic acid; (b) a cationic lipid comprising from 50 mol % to 65 mol % of the total lipid present in the particle: (c) a non-cationic lipid comprising a mixture of a phospholipid and cholesterol or a derivative thereof, wherein the phospholipid comprises from 4 mol % to 10 mol % of the total lipid present in the particle and the cholesterol or derivative thereof comprises from 30 mol % to 40 mol % of the total lipid present in the particle; and (d) a conjugated lipid that inhibits aggregation of particles comprising from 0.5 mol % to 2 mol % of the total lipid present in the particle."

54.    A month after the Moderna/NIH preprint appeared, the PTAB rejected Moderna's IPR challenge to the '069 Patent in its entirety, triggering a ten percent drop in Moderna's share price in a single day.  Although Moderna promptly issued public statements denying any infringement, it was conspicuously silent about what LNP technology is used in its vaccine, if not what is described by its own co-authors in the Moderna/NIH preprint.  Moderna did not request retraction of the Moderna/NIH preprint or otherwise submit a correction of it.  Instead, when it came time to publish the official version of that preprint in the scientific publication *Nature*, it simply excised the relevant details about the LNP technology it was using.

55.    Nonetheless, another preclinical study of Moderna's COVID-19 vaccine, authored by Corbett et al. and published on the website of *The New England Journal of Medicine* on July 28, 2020, confirmed that the mRNA was encapsulated in an LNP "as described previously" and

20

cited a prior Moderna publication that discloses the same lipid molar ratio as the Moderna/NIH preprint.[33]  Four of the article's authors were affiliated with Moderna at the time of the article's publication.  Moderna did not request retraction of the Corbett 2020 *The New England Journal of Medicine* article or otherwise submit a correction of the Corbett 2020 *The New England Journal of Medicine* article.

56.    What is more, on May 14, 2021, Moderna submitted an international patent application titled "Coronavirus RNA Vaccines and Methods of Use," which published on August 12, 2021, as International Patent Publication WO 2021/159130.  In that application, "Example 1: Phase 1 Clinical Trial" identifies the specific ionizable lipid used in the Phase I clinical trial of Moderna's vaccine as "heptadecan-9-yl 8 ((2 hydroxyethyl)(6 oxo 6-(undecyloxy)hexyl) amino)octanoate 20," also known as SM-102, which in its ionized state is positively charged (cationic).[34]  Example 1 also recites that the particles used in the Phase I clinical trial of Moderna's vaccine are prepared with the same lipid molar ratio identified in the Moderna/NIH preprint, i.e.: 50 mol % of an ionizable lipid that is cationic; 10 mol % of a phospholipid (DSPC); 38.5 mol % of cholesterol; and 1.5 mol % of a conjugated lipid that inhibits aggregation of particles (PEG-lipid).[35]

---

[33] *See* Corbett et al., "Evaluation of the mRNA-1273 Vaccine against SARS-CoV-2 in Nonhuman Primates," *NEJM* 383;16:1544-1555, 1546 (2020) (citing Hassett et al., "Optimization of Lipid Nanoparticles for Intramuscular Administration of mRNA Vaccines," *Mol. Ther. Nucl. Acids* 15:1-11, 8 (2019)), *available at* https://www.nejm.org/doi/full/10.1056/nejmoa2024671#.

[34] *See* International Patent Publication WO 2021/159130 at 49.

[35] *See id.* ("The SARS-CoV-2 mRNA vaccine. . .  was a lipid nanoparticle (LNP) dispersion of an mRNA encoding the prefusion stabilized spike protein SARS-CoV-2 formulated in LNPs composed of four (4) lipids (50 mol% ionizable lipid heptadecan-9-yl 8 ((2 hydroxyethyl)(6 oxo 6-(undecyloxy)hexyl)amino)octanoate 20 (Compound 1); 10 mol% 1,2 distearoyl sn glycero-3 phosphocholine (DSPC); 38.5 mol% cholesterol; and 1.5 mol% l-monomethoxypolyethyleneglycol-2,3-dimyristylglycerol with polyethylene glycol of average molecular weight 2000 (PEG2000 DMG)).").

57.     Notwithstanding its repeated statements in published articles and its patent application, Moderna publicly denied infringement of Arbutus's patents, ostensibly on the basis that the LNPs in Moderna's COVID-19 vaccine manufactured and sold initially on the basis of EUA and now with full FDA approval differed from the LNPs in its Phase I clinical trial.  But while Moderna was denying infringement in public statements, its Senior Vice President and Deputy General Counsel, Shaun Ryan, submitted on February 23, 2021, a sworn statement under penalty of perjury in support of one of its IPR appeals to the United States Court of Appeals for the Federal Circuit.  In that sworn declaration, he stated that the "lipid carrier particle" used in its Phase I study—described in the Moderna/NIH preprint and WO 2021/159130 as being within the scope at least of Claim 1 of the '069 Patent—is the same as the one that was "ultimately approved" for use in its product.[36]

58.     Moreover, discovery in the Moderna Action has shown that Moderna has made only insubstantial changes to the target molar ratio of its Accused Product, and Moderna has characterized these changes as "minor" "subtle" "slight," "a small change" or "a rounding error[]."[37]  The Accused Product continues to contain particles that fall within the ranges of the claims in the Asserted Patents.  For example, Moderna submitted certificates of analysis to FDA for each lot of Accused Product it manufactured, and these certificates showed it was infringing the Asserted Patents.[38]  Plaintiffs tested samples of the Accused Product and every sample Plaintiffs tested contained infringing particles.[39]  And Moderna itself performed the same type of

---

[36]  Declaration of Shaun Ryan, Mot. to Supplement the Record to Provide Evidence of Standing, Dkt. No. 18, 11-12 ¶¶ 3-4, *Moderna TX, Inc. v. Arbutus Biopharma Corp.*, No. 2020-2329 (Fed. Cir.).

[37] *Arbutus*, No. 22-252, D.I. 677-1 Ex. F (D. Del. Dec. 16, 2025).

[38] *See Arbutus*, No. 22-252, D.I. 607 at 142 (D. Del. Sep. 15, 2025).

[39] *Id.*

testing as Plaintiffs on its COVID-19 vaccine, and that testing also showed that each sample tested contained infringing particles.[40]

59.    Administration of the Accused Product to persons in the United States commenced immediately after the FDA granted Moderna's COVID-19 vaccine an EUA on December 18, 2020.

60.    On June 1, 2021, Moderna announced that it had initiated the FDA process for a BLA—i.e., for the full-fledged licensure of its COVID-19 vaccine.  On January 31, 2022, the FDA approved Moderna's BLA for its COVID-19 vaccine.[41]

## F.    Arbutus and Genevant Attempt to Negotiate a License with Moderna

61.    Plaintiffs tried to avoid the need to file a lawsuit against Moderna in the Delaware district court, or against the United States in this Court.

62.    Many companies have paid Plaintiffs for a license to use the breakthrough LNP technology at issue here, including several companies that sought to develop COVID-19 vaccines and several other companies with which Genevant has ongoing development collaborations.  The research and development facilitated by these and other licenses resulted in product candidates across a variety of conditions.

63.    Plaintiffs would have preferred to resolve their dispute with Moderna with a mutually acceptable license from Genevant.  And Plaintiffs have long sought to do just that.  In proposing such a license, Plaintiffs did not wish to minimize the importance of Moderna's extensive efforts to manufacture and distribute billions of doses of its COVID-19 vaccine in the midst of a global pandemic.  Those efforts have been vitally important and have saved countless

---

[40] *Id.* at 144–45.
[41]  Press Release, Moderna, Moderna Receives Full U.S. FDA Approval for COVID-19 Vaccine Spikevax (Jan. 31, 2022), https://investors.modernatx.com/news/news-details/2022/Moderna-Receives-Full-U.S.-FDA-Approval-for-COVID-19-Vaccine-Spikevax/default.aspx.

lives.  Rather, Plaintiffs sought only the fair and reasonable compensation to which they are entitled by law for their contributions to Moderna's COVID-19 vaccine—contributions that were the product of decades of pioneering work by Arbutus scientists, many now at Genevant companies, including during periods when it was uncertain whether mRNA vaccines could ultimately be made to work.

64.     Unfortunately, Moderna consistently declined to engage meaningfully in licensing discussion, necessitating Plaintiffs' lawsuit against Moderna.

65.     On November 23, 2020, Arbutus and Genevant sent Moderna a letter stating that the Accused Product may infringe claims of each of the then-issued Asserted Patents and offering to discuss the terms of a collaboration or license to further both parties' goal of ending the COVID-19 pandemic.  Moderna acknowledged receipt of this letter on November 25, 2020.

66.     On December 10, 2020, Moderna sent a letter to Arbutus and Genevant stating that Moderna was "open to hearing [Genevant's] proposal for a partnership or patent license."

67.     Upon receiving the Arbutus and Genevant proposal, however, Moderna declined to negotiate.  Moderna also declined repeated requests to provide samples or non-public documents, even under a confidentiality agreement, to support any assertion that it does not infringe the Asserted Patents, including those in which it invested substantial resources and time to challenge, throughout 2020 and 2021, before the United States Patent and Trademark Office and the United States Court of Appeals for the Federal Circuit.

**G.      Moderna Refuses to Compensate Arbutus and Genevant for Using Their Technology**

68.     Despite Arbutus and Genevant's repeated efforts, Moderna refused to take a license from, partner with, or otherwise compensate Plaintiffs for their contribution to Moderna's COVID-19 vaccine.  Instead, Moderna continues to infringe the Asserted Patents directly and

indirectly, without authority and with actual knowledge of, or reckless disregard for, the fact that its actions constitute infringement of the Asserted Patents.

69.     However, Moderna has made extensive use of, and earned billions in profits exploiting, Arbutus's patented technology, including the technology described and claimed in the Asserted Patents.  Moderna's actions have caused harm, and continue to cause harm, to Arbutus and Genevant.  Arbutus and Genevant had no choice but to defend their proprietary and patented technology and seek fair and reasonable compensation for the value of their innovation.

**H.     Moderna Enters Into a Contract for Sale of the Accused Product to the United States**

70.     In August 2020, the United States, acting through the Army Contracting Command of the U.S. Department of Defense, entered into the C-100 contract with ModernaTX, Inc.[42]  This contract obligated Moderna to produce and deliver up to 500 million doses of the Accused Product to Moderna, with a total contract value up to $8.125 billion.  This contract incorporated by reference certain "authorization and consent" clauses, including FAR clauses 52.227-1 and 52.227-1.[43]  Pursuant to this C-100 Contract, Moderna sold at least 500 million doses of the Accused Product to the United States Government, and doses sold to the United States have in turn been distributed and administered around the nation.

71.     The Statement of Work for Moderna's C-100 Contract explains that the Contract was entered into as part of the United States' Operation Warp Speed ("OWS") program, under which DOD and HHS coordinated the development, distribution, and administration of vaccines and other medical countermeasures in response to the COVID-19 pandemic.[44]  As the C-100 Contract described, pursuant to a memorandum of understanding between HHS and DOD,

---

[42] *Arbutus*, No. 22-252, D.I. 17-1, Ex. A at 46 (D. Del. May 6, 2022).
[43] *Id.* at 47.
[44] *Id.* at 19.

25

COVID-19 vaccines were to be procured through contracts issued by DOD, with HHS providing subject-matter expertise and support in inspecting and accepting vaccine deliveries.[45]  Through this contract and its other activities, OWS supported the large-scale manufacture, licensure, storage, distribution, and administration of Moderna's COVID-19 vaccine.[46]  Further, through this contract and others, the United States, acting through its agencies, including DOD, HHS, Operation Warp Speed, and the Centers for Disease Control and Prevention, oversaw the storage and distribution of Moderna's COVID-19 vaccine.[47]

## I.    Moderna and the United States Government Sought to Dismiss Arbutus and Genevant's Claims Against Moderna as to Sales Under the C-100 Contract and Continue to Assert that Such Sales are Covered by 28 U.S.C. § 1498(a)

72.    After Plaintiffs filed the Moderna Action, Moderna moved for partial dismissal arguing that Plaintiffs' claims for compensation for the sale and provision of doses of the Accused Product to the United States Government could only proceed in this Court pursuant to 28 U.S.C. § 1498(a).  Plaintiffs opposed that motion, and on November 2, 2022, the Delaware district court denied Moderna's motion.  The court concluded that Moderna had not satisfied its burden of showing that 28 U.S.C. § 1498(a) applied, as issues of fact remained as to whether Moderna's infringement was done "for the Government" and whether Moderna's infringement was done with the authorization and consent of the United States.[48]

73.    On February 14, 2023, the United States Government filed a Statement of Interest in the Moderna Action on behalf of DOD and HHS.  The United States argued that Plaintiffs were "limited to pursuing a claim against the United States in the Court of Federal Claims

---

[45] *Id.*

[46] *Id.*

[47] U.S. Dep't of Defense, Operation Warp Speed Vaccine Distribution Process, *available at* https://media.defense.gov/2020/Sep/16/2002498504/-1/-1/1/OWS-VACCINE-DISTRIBUTION-GRAPHIC.PDF.

[48] *Arbutus*, No. 22-252, D.I. 31 at 8–15 (D. Del. Nov. 2, 2022).

pursuant to 28 U.S.C. § 1498," which "provides the exclusive remedy for any infringement occurring in the course of Moderna's performance of the [C-100] Contract."[49]  After receiving the United States' Statement of Interest, the Delaware district court reaffirmed its prior order, denying Moderna's partial motion to dismiss given the remaining factual disputes.[50]

74.     The parties also cross-moved for summary judgment as to 28 U.S.C. § 1498(a). On February 2, 2026, the Delaware district court granted Moderna's motion with respect to the Government Employee Doses and granted Plaintiffs' motion with respect to all other doses.[51]

75.     On March 4, 2026, the Delaware district court entered a Consent Judgment, resolving the Moderna Action.  With respect to Moderna's affirmative defense under 28 U.S.C. § 1498, the court entered judgment against Moderna for the doses of its vaccine that were not Government Employee Doses and entered judgment in Moderna's favor with respect to the Government Employee Doses.[52]  Moderna reserved the right to appeal the Delaware district court's adjudication concerning the applicability of 28 U.S.C § 1498(a).[53]

76.     To the extent that Moderna appeals from the Delaware district court's judgment as to the applicability of 28 U.S.C. § 1498(a) to sales under the C-100 Contract other than the Government Employee Doses, Arbutus and Genevant will continue to vigorously dispute that they must pursue their reasonable and entire compensation from the United States in this Court for Moderna's infringing sales under that Contract, rather than obtaining a reasonable royalty from Moderna for its infringement.  Nevertheless, to prevent the operation of any statute of limitations that could preclude Plaintiffs from obtaining their fair, reasonable and entire

---

[49] *Arbutus*, No. 22-252, D.I. 49 at 2 (D. Del. Feb. 14, 2023).
[50] *Arbutus*, No. 22-252, D.I. 64 at 4 (D. Del. March 10, 2023).
[51] *Arbutus*, No. 22-252, D.I. 698 ¶¶ 1(a)(i), 1(b), 3(a) (D. Del. Feb. 2, 2026).
[52] *Id.* ¶¶ 3(a)–(b).
[53] *Id.* ¶ 3(c).

compensation for the infringement and to preserve their rights, Plaintiffs file their Complaint against the United States Government at this time.

**COUNT 1: USE OR MANUFACTURE OF PRODUCTS THAT INFRINGE *U.S. PATENT NO. 8,058,069* FOR, AND WITH THE <u>AUTHORIZATION AND CONSENT OF, THE UNITED STATES</u>**

77.    Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

78.    The United States Patent and Trademark Office duly and legally issued the '069 Patent to one of Arbutus's predecessor companies on November 15, 2011.  The '069 Patent is titled "Novel Lipid Formulations for Nucleic Acid Delivery."

79.    Arbutus owns, and at all relevant times has owned, the '069 Patent.

80.    Genevant holds, and at all relevant times has held, Exclusive Rights in the '069 Patent for certain fields of use, which include COVID-19.  Genevant has the right to sue and seek damages for the infringement alleged herein.

81.    Claims of the '069 Patent cover, among other things, nucleic acid-lipid particles and compositions thereof.

82.    The United States entered into the C-100 Contract with Moderna, pursuant to which Moderna has infringed and continues to infringe claims of the '069 Patent by using and/or manufacturing the Accused Product incorporating Arbutus's patented LNP delivery technology covered by the '069 Patent during the term of the '069 Patent, without authority or license to do so, which use and/or manufacture the United States contends are "for the government" and with its "authorization and consent."[54]  The Delaware district court in the Moderna Action further concluded that "[w]hile Section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement

---

[54] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).

for the vaccine doses that the Government acquired and distributed to its own employees."[55]  The Accused Product includes each limitation of at least one claim of the '069 Patent.

83.    For example, Claim 1 of the '069 Patent recites a "nucleic acid-lipid particle comprising: (a) a nucleic acid; (b) a cationic lipid comprising from 50 mol % to 65 mol % of the total lipid present in the particle; (c) a non-cationic lipid comprising a mixture of a phospholipid and cholesterol or a derivative thereof, wherein the phospholipid comprises from 4 mol % to 10 mol % of the total lipid present in the particle and the cholesterol or derivative thereof comprises from 30 mol % to 40 mol % of the total lipid present in the particle; and (d) a conjugated lipid that inhibits aggregation of particles comprising from 0.5 mol % to 2 mol % of the total lipid present in the particle."

84.    The Accused Product is a pharmaceutical composition of nucleic acid-lipid particles.  The nucleic acid in the Asserted Product is an mRNA which encodes the COVID-19 spike protein.

85.    The Accused Product comprises nucleic acid-lipid particles comprising the following lipids: an ionizable cationic lipid (SM-102); a phospholipid (DSPC); cholesterol; and a conjugated lipid that inhibits aggregation of particles (a PEG-lipid conjugate).

86.    As indicated in the Moderna/NIH preprint and in International Patent Publication WO 2021/159130, Moderna initially designed the Accused Product to comprise nucleic acid-lipid particles comprising the following lipids in the following ratio of the total lipid present in the particle: 50 mol % of an ionizable cationic lipid; 10 mol % of a phospholipid; 38.5 mol % of cholesterol; and 1.5 mol % of a conjugated lipid that inhibits aggregation of particles.  The presence of infringing particles meeting the claim limitations has also been confirmed by testing

_____

[55] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).

Plaintiffs performed in the Moderna Action and by discovery produced by Moderna in that case.[56]

87.    Moderna's use and manufacture of Arbutus's patented LNP delivery technology covered by the '069 Patent during the term of the '069 Patent, which the United States contends is "for the government" and with its "authorization and consent,"[57] without authority or license to do so, would subject the United States to liability for patent infringement under at least 35 U.S.C. § 271(a) were it a private party.

88.    Moderna has known of the '069 Patent since before it commenced the infringing conduct or has been willfully blind to its existence and contents since then.  Moderna has long been aware of, and has actively monitored Arbutus's patent estate, including the '069 Patent.[58] Moderna secured unauthorized limited sublicenses to Arbutus's LNP-related patents through Acuitas; Moderna later sought to invalidate three of Arbutus's LNP-related patents, including the '069 Patent, through *inter partes* review; and Moderna has repeatedly made public representations regarding Arbutus's LNP technology and patents.[59]  Despite such knowledge, Moderna nonetheless has engaged in the manufacture or use of the Accused Product, which the United States contends is done "for the government" and with its "authorization and consent,"[60] in violation of Plaintiffs' patent rights.

---

[56] *See Arbutus*, No. 22-252, D.I. 607 at 142, 144–45 (D. Del. Sep. 15, 2025).
[57] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[58] *See, e.g.*, Moderna Mot. at 4-5, Dkt. No. 18, *Moderna TX, Inc. v. Arbutus Biopharma Corp.* (Fed. Cir. No. 2020-2329).
[59] *See, e.g.*, Moderna Mot. at 5, Dkt. No. 18, *Moderna TX, Inc. v. Arbutus Biopharma Corp.* (Fed. Cir. No. 2020-2329); Press Release, Moderna, Statement from Moderna on Patent Trial and Appeal Board (PTAB) Ruling (July 24, 2020), https://investors.modernatx.com/news-releases/news-release-details/statement-moderna-patent-trial-and-appeal-board-ptab-ruling.
[60] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).

89.    Arbutus and Genevant are entitled to a judgment that the claims of the '069 Patent have been infringed by the manufacture or use of the Accused Product, which the United States contends is done "for the government" and with its "authorization and consent."[61]

90.    This infringement, which the United States contends is done "for the government" and with its "authorization and consent,"[62] has damaged and continues to damage Arbutus and Genevant.  Accordingly, pursuant to 28 U.S.C. § 1498, Arbutus and Genevant are entitled to recover reasonable and entire compensation from the United States for that damage.

**COUNT 2: USE OR MANUFACTURE OF PRODUCTS THAT INFRINGE *U.S. PATENT NO. 8,492,359* FOR, AND WITH THE AUTHORIZATION AND CONSENT OF, THE UNITED STATES**

91.    Paragraphs 1 through 90 are incorporated by reference as if fully set forth herein.

92.    The United States Patent and Trademark Office duly and legally issued the '359 Patent to one of Arbutus's predecessor companies on July 23, 2013.  The '359 Patent is titled "Lipid Formulations for Nucleic Acid Delivery."

93.    Arbutus owns, and at all relevant times has owned, the '359 Patent.

94.    Genevant holds, and at all relevant times has held, Exclusive Rights in the '359 Patent for certain fields of use, which include COVID-19.  Genevant has the right to sue and seek damages for the infringement alleged herein.

95.    The Delaware district court in the Moderna Action entered a judgment of infringement by the Accused Product as to the '359 Patent.[63]  The Delaware district court further entered a judgment of no invalidity as to that patent based solely on the disclosures of the patent's specification, the relevant priority dates, and the parties' contentions and expert

---

[61] *Id.*
[62] *Id.*
[63] *Arbutus*, No. 22-252, D.I. 758 ¶ 2(a) (D. Del. Mar. 4, 2026).

opinions, the specific asserted relevant prior art, the specific prior related proceedings, and the asserted claims in the patent.[64]

96.    Claims of the '359 Patent cover, among other things, nucleic acid-lipid particles and compositions thereof.

97.    The United States entered into the C-100 Contract with Moderna, pursuant to which Moderna has infringed and continues to infringe claims of the '359 Patent by using and/or manufacturing the Accused Product incorporating Arbutus's patented LNP delivery technology covered by the '359 Patent during the term of the '359 Patent, without authority or license to do so, which use and/or manufacture the United States contends is "for the government" and with its "authorization and consent."[65]  The Delaware district court in the Moderna Action further concluded that "[w]hile Section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement for the vaccine doses that the Government acquired and distributed to its own employees."[66]  The Accused Product includes each limitation of at least one claim of the '359 Patent.

98.    For example, Claim 1 of the '359 Patent recites a "nucleic acid-lipid particle comprising: (a) a nucleic acid; (b) a cationic lipid comprising from 50 mol % to 65 mol % of the total lipid present in the particle; (c) a non-cationic lipid comprising a mixture of a phospholipid and cholesterol or a derivative thereof, wherein the phospholipid comprises from 3 mol % to 15 mol % of the total lipid present in the particle and the cholesterol or derivative thereof comprises from 30 mol % to 40 mol % of the total lipid present in the particle; and (d) a conjugated lipid

---

[64] *Id.* ¶ 2(b).
[65] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[66] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).

that inhibits aggregation of particles comprising from 0.5 mol % to 2 mol % of the total lipid present in the particle."

99.    The Accused Product is a pharmaceutical composition of nucleic acid-lipid particles.  The nucleic acid in the Accused Product is an mRNA which encodes the COVID-19 spike protein.

100.    The Accused Product comprises nucleic acid-lipid particles comprising the following lipids: an ionizable cationic lipid (SM-102); a phospholipid (DSPC); cholesterol; and a conjugated lipid that inhibits aggregation of particles (a PEG-lipid conjugate).

101.    As indicated in the Moderna/NIH preprint and in International Patent Publication WO 2021/159130, Moderna initially designed the Accused Product to comprise nucleic acid-lipid particles comprising the following lipids in the following ratio of the total lipid present in the particle: 50 mol % of an ionizable cationic lipid; 10 mol % of a phospholipid; 38.5 mol % of cholesterol; and 1.5 mol % of a conjugated lipid that inhibits aggregation of particles.  The presence of infringing particles meeting the claim limitations has also been confirmed by testing Plaintiffs performed in the Moderna Action and by discovery produced by Moderna in that case.[67]

102.    Moderna's use and manufacture of Arbutus's patented LNP delivery technology covered by the '359 Patent during the term of the '359 Patent, which the United States contends is "for the government" and with its "authorization and consent,"[68] without authority or license to do so, would subject the United States to liability for patent infringement under at least 35 U.S.C. § 271(a) were it a private party.

---

[67] *See Arbutus*, No. 22-252, D.I. 607 at 142, 144–45 (D. Del. Sep. 15, 2025).
[68] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).

103.    Moderna has known of the '359 Patent since before it commenced the infringing conduct or has been willfully blind to its existence and contents since then.  Moderna has long been aware of and actively monitored Arbutus's patent estate.  Moderna secured unauthorized limited sublicenses to Arbutus's LNP-related patents through Acuitas; Moderna later sought to invalidate three of Arbutus's LNP-related patents through *inter partes* review; and Moderna has repeatedly made public statements regarding Arbutus's LNP technology and patents.  The '359 Patent is in the same family as, and is cited on the face of, the '435 Patent that Moderna challenged in *inter partes* review.  Despite such knowledge, Moderna nonetheless has engaged in the manufacture or use of the Accused Product, which the United States contends is done "for the government" and with its "authorization and consent,"[69] in violation of Plaintiffs' patent rights.

104.    Arbutus and Genevant are entitled to a judgment that the claims of the '359 Patent have been infringed by the manufacture or use of the Accused Product, which the United States contends is "for the government" and with its "authorization and consent."[70]

105.    This infringement, which the United States contends is done "for the government" and with its "authorization and consent,"[71] has damaged and continues to damage Arbutus and Genevant.  Accordingly, pursuant to 28 U.S.C. § 1498, Arbutus and Genevant are entitled to recover reasonable and entire compensation from the United States for that damage.

**COUNT 3: USE OR MANUFACTURE OF PRODUCTS THAT INFRINGE *U.S. PATENT NO. 8,822,668* FOR, AND WITH THE AUTHORIZATION AND CONSENT OF, THE UNITED STATES**

106.    Paragraphs 1 through 105 are incorporated by reference as if fully set forth herein.

---

[69] *Id.*

[70] *Id.*

[71] *Id.*

107.    The United States Patent and Trademark Office duly and legally issued the '668 Patent to one of Arbutus's predecessor companies on September 2, 2014.  The '668 Patent is titled "Lipid Formulations for Nucleic Acid Delivery."

108.    Arbutus owns, and at all relevant times has owned, the '668 Patent.

109.    Genevant holds, and at all relevant times has held, Exclusive Rights in the '668 Patent for certain fields of use, which include COVID-19.  Genevant has the right to sue and seek damages for the infringement alleged herein.

110.    Claims of the '668 Patent cover, among other things, nucleic acid-lipid particles and compositions thereof and methods of using them.

111.    The United States entered into the C-100 Contract with Moderna, pursuant to which Moderna has infringed and continues to infringe claims of the '668 Patent by using and/or manufacturing the Accused Product incorporating Arbutus's patented LNP delivery technology covered by the '668 Patent during the term of the '668 Patent, without authority or license to do so, which use and/or manufacture the United States contends is "for the government" and with its "authorization and consent."[72]  The Delaware district court in the Moderna Action further concluded that "[w]hile Section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement for the vaccine doses that the Government acquired and distributed to its own employees."[73]  The Accused Product includes each limitation of at least one claim of the '668 Patent.

112.    For example, Claim 1 of the '668 Patent recites a "nucleic acid-lipid particle comprising: (a) a nucleic acid; (b) a cationic lipid comprising from 50 mol % to 65 mol % of the

---

[72] *Id.*
[73] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).

total lipid present in the particle; (c) a non-cationic lipid comprising up to 49.5 mol % of the total lipid present in the particle and comprising a mixture of a phospholipid and cholesterol or a derivative thereof, wherein the cholesterol or derivative thereof comprises from 30 mol % to 40 mol % of the total lipid present in the particle; and (d) a conjugated lipid that inhibits aggregation of particles comprising from 0.5 mol % to 2 mol % of the total lipid present in the particle."

113.    The Accused Product is a pharmaceutical composition of nucleic acid-lipid particles.  The nucleic acid in the Accused Product is an mRNA which encodes the COVID-19 spike protein.

114.    The Accused Product comprises nucleic acid-lipid particles comprising the following lipids: an ionizable cationic lipid (SM-102); a non-cationic lipid comprising a mixture of a phospholipid and cholesterol; and a conjugated lipid that inhibits aggregation of particles (a PEG-lipid conjugate).

115.    As indicated in the Moderna/NIH preprint and in International Patent Publication WO 2021/159130, Moderna initially designed the Accused Product to comprise nucleic acid-lipid particles comprising the following lipids in the following ratio of the total lipid present in the particle: 50 mol % of an ionizable cationic lipid; 10 mol % of a phospholipid; 38.5 mol % of cholesterol; and 1.5 mol % of a conjugated lipid that inhibits aggregation of particles.  The presence of infringing particles meeting the claim limitations has also been confirmed by testing Plaintiffs performed in the Moderna Action and by discovery produced by Moderna in that case.[74]

116.    When used as intended, the Accused Product infringes the '668 Patent's method claims.

---

[74] *See Arbutus*, No. 22-252, D.I. 607 at 142, 144–45 (D. Del. Sep. 15, 2025).

117.    For example, Claim 20 of the '668 patent recites "[a] method for treating a disease or disorder in a mammalian subject in need thereof, the method comprising: administering to the mammalian subject a therapeutically effective amount of a nucleic acid-lipid particle of claim 1."

118.    Moderna's COVID-19 vaccine is intended for use in a method for treating a disease or disorder in a mammalian subject in need thereof, namely vaccination of a human against COVID-19.  Moderna's COVID-19 vaccine comprises the nucleic acid-lipid particles of Claim 1 and it is intended for administration to a human in need thereof.  Moderna's COVID-19 vaccine comprises a therapeutically effective amount of a nucleic acid-lipid particle of Claim 1. When used as intended, the Accused Product infringes Claim 20.

119.    Moderna's use and manufacture of Arbutus's patented LNP delivery technology covered by the '668 Patent during the term of the '668 Patent, which the United States contends is "for the government" and with its "authorization and consent,"[75] without authority or license to do so, would subject the United States to liability for patent infringement under at least 35 U.S.C. § 271(a) were it a private party.  The Delaware district court in the Moderna Action further concluded that "[w]hile Section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement for the vaccine doses that the Government acquired and distributed to its own employees."[76]

120.    Moderna has known of the '668 Patent since before it commenced the infringing conduct or has been willfully blind to its existence and contents since then.  Moderna has long

---

[75] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[76] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).

been aware of and actively monitored Arbutus's patent estate. Moderna secured unauthorized limited sublicenses to Arbutus's LNP-related patents through Acuitas; Moderna later sought to invalidate three of Arbutus's LNP-related patents through *inter partes* review; and Moderna has repeatedly made public statements regarding Arbutus's LNP technology and patents. The '668 Patent is in the same family as, and is cited on the face of, the '435 Patent that Moderna challenged in *inter partes* review. Despite such knowledge, Moderna nonetheless has engaged in the manufacture or use of the Accused Product, which the United States contends is done "for the government" and with its "authorization and consent,"[77] in violation of Plaintiffs' patent rights.

121.    Arbutus and Genevant are entitled to a judgment that the claims of the '668 Patent have been infringed by the manufacture or use of the Accused Product, which the United States contends is "for the government" and with its "authorization and consent."[78]

122.    This infringement, which the United States contends is "for the government" and with its "authorization and consent,"[79] has damaged and continues to damage Arbutus and Genevant. Accordingly, pursuant to 28 U.S.C. § 1498, Arbutus and Genevant are entitled to recover reasonable and entire compensation from the United States for that damage.

### COUNT 4: USE OR MANUFACTURE OF PRODUCTS THAT INFRINGE *U.S. PATENT NO. 9,364,435* FOR, AND WITH THE AUTHORIZATION AND CONSENT OF, THE UNITED STATES

123.    Paragraphs 1 through 122 are incorporated by reference as if fully set forth herein.

---

[77] *Id.*
[78] *Id.*
[79] *Id.*

124.    The United States Patent and Trademark Office duly and legally issued the '435 Patent to one of Arbutus's predecessor companies on June 14, 2016.  The '435 Patent is titled "Lipid Formulations for Nucleic Acid Delivery."

125.    Arbutus owns, and at all relevant times has owned, the '435 Patent.

126.    Genevant holds, and at all relevant times has held, Exclusive Rights in the '435 Patent for certain fields of use, which include COVID-19.  Genevant has the right to sue and seek damages for the infringement alleged herein.

127.    Claims of the '435 Patent cover, among other things, nucleic acid-lipid particles and compositions thereof and methods of using them.

128.    The Delaware district court in the Moderna Action entered a judgment of infringement by the Accused Product as to the '435 Patent.[80]  The Delaware district court further entered a judgment of no invalidity as to that patent based solely on the disclosures of the patent's specification, the relevant priority dates, and the parties' contentions and expert opinions, the specific asserted relevant prior art, the specific prior related proceedings, and the asserted claims in the patent.[81]

129.    The United States entered into the C-100 Contract with Moderna, pursuant to which Moderna has infringed and continues to infringe claims of the '435 Patent by using and/or manufacturing the Accused Product incorporating Arbutus's patented LNP delivery technology covered by the '435 Patent during the term of the '435 Patent, without authority or license to do so, which use and/or manufacture the United States contends is "for the government" and with its "authorization and consent."[82]  The Delaware district court in the Moderna Action further

---

[80] *Arbutus*, No. 22-252, D.I. 758 ¶ 2(a) (D. Del. Mar. 4, 2026).
[81] *Id.* ¶ 2(b).
[82] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).

concluded that "[w]hile Section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement for the vaccine doses that the Government acquired and distributed to its own employees."[83]  The Accused Product includes each limitation of at least Claim 7 of the '435 Patent.

130.    Claim 7 of the '435 Patent depends from Claims 1 and 5.  Claim 1 of the '435 Patent recites a "nucleic acid-lipid particle comprising: (a) a nucleic acid; (b) a cationic lipid comprising from 50 mol % to 85 mol % of the total lipid present in the particle; (c) non-cationic lipid comprising from 13 mol % to 49.5 mol % of the total lipid present in the particle; and (d) a conjugated lipid that inhibits aggregation of particles comprising from 0.5 mol % to 2 mol % of the total lipid present in the particle."  Claim 5 further requires "[t]he nucleic acid-lipid particle of claim 1, wherein the non-cationic lipid comprises a mixture of a phospholipid and cholesterol or a derivative thereof."  Claim 7 further requires "[t]he nucleic acid-lipid particle of claim 5, wherein the phospholipid comprises from 3 mol % to 15 mol % of the total lipid present in the particle."

131.    The Accused Product is a pharmaceutical composition of nucleic acid-lipid particles.  The nucleic acid in the Accused Product is an mRNA which encodes the COVID-19 spike protein.

132.    The Accused Product comprises an ionizable cationic lipid (SM-102), a non-cationic lipid (a mixture of phospholipid and cholesterol), and a conjugated lipid that inhibits aggregation of particles (a PEG-lipid conjugate).

133.    As indicated in the Moderna/NIH preprint and in International Patent Publication WO 2021/159130, Moderna initially designed the Accused Product to comprise nucleic acid-

---

[83] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).

lipid particles comprising the following lipids in the following ratio of the total lipid present in the particle: 50 mol % of an ionizable cationic lipid; 48.5 mol % of a non-cationic lipid; and 1.5 mol % of a conjugated lipid that inhibits aggregation of particles.

134.    As indicated in the Moderna/NIH preprint and in International Patent Publication WO 2021/159130, Moderna initially designed the Accused Product to comprise nucleic acid-lipid particles where the non-cationic lipid comprises a mixture of a phospholipid and cholesterol.  As indicated in the Moderna/NIH preprint and in International Patent Publication WO 2021/159130, Moderna initially designed the Accused Product to comprise nucleic acid-lipid particles where 10 mol % of the total lipid present in the particle is a phospholipid.

135.    The presence of infringing particles meeting the claim limitations has also been confirmed by testing Plaintiffs performed in the Moderna Action and by discovery produced by Moderna in that case.[84]

136.    When used as intended, the Accused Product infringes the '435 Patent's method claims.

137.    For example, Claim 17 of the '435 Patent recites a "method for treating a disease or disorder in a mammalian subject in need thereof, the method comprising: administering to the mammalian subject a therapeutically effective amount of a nucleic acid-lipid particle of claim 1."

138.    The Accused Product is intended for use in a method for treating a disease or disorder in a mammalian subject in need thereof, namely vaccination of a human against COVID-19.  The Accused Product comprises the nucleic acid-lipid particles of Claim 1 and it is intended for administration to a human in need thereof.  The Accused Product comprises a therapeutically effective amount of a nucleic acid-lipid particle of Claim 1.  When used as

---

[84] *See Arbutus*, No. 22-252, D.I. 607 at 142, 144–45 (D. Del. Sep. 15, 2025).

intended, and as Moderna specifically instructs and encourages that it be used, the Accused

Product infringes Claim 17.

139.    Moderna's use and manufacture of Arbutus's patented LNP delivery technology

covered by the '435 Patent during the term of the '435 Patent, which the United States contends

is "for the government" and with its "authorization and consent,"[85] without authority or license

to do so, would subject the United States to liability for patent infringement under at least 35

U.S.C. § 271(a) were it a private party.

140.    Moderna has known of the '435 Patent since before it commenced the infringing

conduct or has been willfully blind to its existence and contents since then.  Moderna has long

been aware of and actively monitored Arbutus's patent estate.  Moderna secured unauthorized

limited sublicenses to Arbutus's LNP-related patents through Acuitas; Moderna later sought to

invalidate three of Arbutus's LNP-related patents, including the '435 Patent, through *inter partes*

review, and Moderna has repeatedly made public statements regarding Arbutus's LNP

technology and patents.  Despite such knowledge, Moderna nonetheless has engaged in the

manufacture or use of the Accused Product, which the United States contends is done "for the

government" and with its "authorization and consent,"[86] in violation of Plaintiffs' patent rights.

141.    Arbutus and Genevant are entitled to a judgment that the claims of the '435 Patent

have been infringed by the manufacture or use of the Accused Product, which the United States

contends is "for the government" and with its "authorization and consent."[87]

---

[85] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[86] *Id.*
[87] *Id.*

42

142.    This infringement, which the United States contends is "for the government" and with its "authorization and consent,"[88] has damaged and continues to damage Arbutus and Genevant.  Accordingly, pursuant to 28 U.S.C. § 1498, Arbutus and Genevant are entitled to recover reasonable and entire compensation from the United States for that damage.

## COUNT 5: USE OR MANUFACTURE OF PRODUCTS THAT INFRINGE *U.S. PATENT NO. 9,504,651* FOR, AND WITH THE AUTHORIZATION AND CONSENT OF, THE UNITED STATES

143.    Paragraphs 1 through 142 are incorporated by reference as if fully set forth herein.

144.    The United States Patent and Trademark Office duly and legally issued the '651 Patent to one of Arbutus's predecessor companies on November 29, 2016.  The '651 Patent is titled "Lipid Compositions for Nucleic Acid Delivery."

145.    Arbutus owns, and at all relevant times has owned, the '651 Patent.

146.    Genevant holds, and at all relevant times has held, Exclusive Rights in the '651 Patent for certain fields of use, which include COVID-19.  Genevant has the right to sue and seek damages for the infringement alleged herein.

147.    Claims of the '651 Patent cover, among other things, lipid vesicle formulations comprising mRNA.

148.    The Delaware district court in the Moderna Action entered a judgment of infringement by the Accused Product as to the '651 Patent.[89]  The Delaware district court further entered a judgment of no invalidity as to that patent based solely on the disclosures of the patent's specification, the relevant priority dates, and the parties' contentions and expert

---

[88] *Id.*

[89] *Arbutus*, No. 22-252, D.I. 758 ¶ 2(a) (D. Del. Mar. 4, 2026).

43

opinions, the specific asserted relevant prior art, the specific prior related proceedings, and the asserted claims in the patent.[90]

149.    The United States entered into the C-100 Contract with Moderna, pursuant to which Moderna has infringed claims of the '651 Patent by using and/or manufacturing the Accused Product incorporating Arbutus's patented LNP delivery technology covered by the '651 Patent during the term of the '651 Patent, without authority or license to do so, which use and/or manufacture the United States contends is "for the government" and with its "authorization and consent."[91]  The Delaware district court in the Moderna Action further concluded that "[w]hile Section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement for the vaccine doses that the Government acquired and distributed to its own employees."[92]  The Accused Product includes each limitation of at least one claim of the '651 Patent.

150.    For example, Claim 1 of the '651 Patent recites a "lipid vesicle formulation comprising: (a) a plurality of lipid vesicles, wherein each lipid vesicle comprises: a cationic lipid; an amphipathic lipid; and a polyethyleneglycol (PEG)-lipid; and (b) messenger RNA (mRNA), wherein at least 70% of the mRNA in the formulation is fully encapsulated in the lipid vesicles."  Claim 9 of the '651 Patent further requires "[t]he lipid vesicle formulation of claim 1, wherein each lipid vesicle is a lipid-nucleic acid particle."

151.    The Accused Product is a lipid vesicle formulation comprising mRNA and lipid vesicles.  The mRNA in the Accused Product encodes the COVID-19 spike protein.

---

[90] *Id.* ¶ 2(b).
[91] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[92] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).

152. The Accused Product comprises a lipid vesicle comprising the following lipids: an ionizable cationic lipid (SM-102); an amphipathic lipid (DSPC); and a PEG-lipid.

153. Discovery in the Moderna Action has revealed that Moderna's Accused Product comprises a lipid vesicle formulation wherein at least 70% of the mRNA in the formulation is fully encapsulated in the lipid vesicles.

154. Moderna has known of the '651 Patent since before it commenced the infringing conduct or has been willfully blind to its existence and contents since then. Moderna has long been aware of and actively monitored Arbutus's patent estate. Moderna secured unauthorized limited sublicenses to Arbutus's LNP-related patents through Acuitas; Moderna later sought to invalidate three of Arbutus's LNP-related patents through *inter partes* review, and Moderna has repeatedly made public statements regarding Arbutus's LNP technology and patents. Despite such knowledge, Moderna nonetheless has engaged in the manufacture or use of the Accused Product, which the United States contends is done "for the government" and with its "authorization and consent,"[93] in violation of Plaintiffs' patent rights.

155. Arbutus and Genevant are entitled to a judgment that the claims of the '651 Patent have been infringed by the manufacture or use of the Accused Product, which the United States contends is "for the government" and with its "authorization and consent."[94]

156. This infringement, which the United States contends is "for the government" and with its "authorization and consent,"[95] has damaged and continues to damage Arbutus and Genevant. Accordingly, pursuant to 28 U.S.C. § 1498, Arbutus and Genevant are entitled to recover reasonable and entire compensation from the United States for that damage.

---

[93] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).
[94] *Id.*
[95] *Id.*

**COUNT 6: USE OR MANUFACTURE OF PRODUCTS THAT
INFRINGE *U.S. PATENT NO. 11,141,378* FOR, AND WITH THE
AUTHORIZATION AND CONSENT OF, THE UNITED STATES**

157.    Paragraphs 1 through 156 are incorporated by reference as if fully set forth herein.

158.    The United States Patent and Trademark Office duly and legally issued the '378 Patent to Arbutus on October 12, 2021.  The '378 Patent is titled "Lipid Formulations for Nucleic Acid Delivery."

159.    Arbutus owns, and at all relevant times has owned, the '378 Patent.

160.    Genevant holds, and at all relevant times has held, Exclusive Rights in the '378 Patent for certain fields of use, which include COVID-19.  Genevant has the right to sue and seek damages for the infringement alleged herein.

161.    Claims of the '378 Patent cover, among other things, nucleic acid-lipid particles and compositions thereof.

162.    The Delaware district court in the Moderna Action entered a judgment of infringement by the Accused Product as to the '378 Patent.[96]  The Delaware district court further entered a judgment of no invalidity as to that patent based solely on the disclosures of the patent's specification, the relevant priority dates, and the parties' contentions and expert opinions, the specific asserted relevant prior art, the specific prior related proceedings, and the asserted claims in the patent.[97]

163.    The United States entered into the C-100 Contract with Moderna, pursuant to which Moderna has infringed and continues to infringe claims of the '378 Patent by using and/or manufacturing the Accused Product incorporating Arbutus's patented LNP delivery technology covered by the '378 Patent during the term of the '378 Patent, without authority or license to do

---

[96] *Arbutus*, No. 22-252, D.I. 758 ¶ 2(a) (D. Del. Mar. 4, 2026).
[97] *Id.* ¶ 2(b).

so, which use and/or manufacture the United States contends is "for the government" and with its "authorization and consent."[98]  The Delaware district court in the Moderna Action further concluded that "[w]hile Section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement for the vaccine doses that the Government acquired and distributed to its own employees."[99]  The Accused Product includes each limitation of at least one claim of the '378 Patent.

164.    For example, Claim 1 of the '378 Patent recites a "nucleic acid-lipid particle consisting essentially of: (a) an RNA; (b) a cationic lipid having a protonatable tertiary amine; (c) a mixture of a phospholipid and cholesterol of from 30 mol % to 55 mol % of the total lipid present in the particle, wherein the phospholipid consists of from 3 mol % to 15 mol % of the total lipid present in the particle; and (d) a polyethyleneglycol (PEG)-lipid conjugate consisting of from 0.1 mol % to 2 mol % of the total lipid present in the particle."  An ionizable lipid having a protonatable tertiary amine becomes a cationic lipid.

165.    The Accused Product is a pharmaceutical composition of nucleic acid-lipid particles.  The nucleic acid in the Accused Product is an mRNA which encodes the COVID-19 spike protein.

166.    The Accused Product comprises nucleic acid-lipid particles comprising the following lipids: an ionizable cationic lipid (SM-102); a non-cationic lipid comprising a mixture of a phospholipid and cholesterol; and a conjugated lipid that inhibits aggregation of particles (a PEG-lipid).

---

[98] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[99] *Arbutus*, No. 22-252, D.I. 697 at 15 (D. Del. Feb. 2, 2026).

167.    As indicated in the Moderna/NIH preprint and in International Patent Publication WO 2021/159130, Moderna initially designed the Accused Product to comprise a cationic lipid having a protonatable tertiary amine; 10 mol % of a phospholipid; 38.5 mol % of cholesterol; and 1.5 mol % of a conjugated lipid that inhibits aggregation of particles.  The presence of infringing particles meeting the claim limitations has also been confirmed by testing Plaintiffs performed in the Moderna Action and by discovery produced by Moderna in that case.[100]

168.    Moderna's use and manufacture of Arbutus's patented LNP delivery technology covered by the '378 Patent during the term of the '378 Patent, which the United States contends is "for the government" and with its "authorization and consent,"[101] without authority or license to do so, would subject the United States to liability for patent infringement under at least 35 U.S.C. § 271(a) were it a private party.

169.    The '378 Patent issued on October 12, 2021.  That day, Genevant sent Moderna an email notice that Moderna may be infringing one or more claims of the '378 Patent.

170.    Despite such knowledge, Moderna nonetheless has engaged in the manufacture or use of the Accused Product, which the United States contends is done "for the government" and with its "authorization and consent,"[102] in violation of Plaintiffs' patent rights.

171.    Arbutus and Genevant are entitled to a judgment that the claims of the '378 Patent have been infringed by the manufacture or use of the Accused Product, which the United States contends is "for the government" and with its "authorization and consent."[103]

---

[100] *See Arbutus*, No. 22-252, D.I. 607 at 142, 144–45 (D. Del. Sep. 15, 2025).
[101] *Arbutus*, No. 22-252, D.I. 49 at 1, 10 (D. Del. Feb. 14, 2023).
[102] *Id.*
[103] *Id.*

172.     This infringement, which the United States contends is "for the government" and with its "authorization and consent,"[104] has damaged and continues to damage Arbutus and Genevant.  Accordingly, pursuant to 28 U.S.C. § 1498, Arbutus and Genevant are entitled to recover reasonable and entire compensation from the United States for that damage.

## PRAYER FOR RELIEF

WHEREFORE, Arbutus and Genevant respectfully request that this Court enter judgment in their favor against the United States and grant the following relief:

A.     A judgment that each of the Asserted Patents has been used or manufactured for the United States without license or lawful right, within the meaning of 28 U.S.C. § 1498, such that Arbutus and Genevant are entitled to the recovery of their reasonable and entire compensation for such use or manufacture;

B.     An award of reasonable and entire compensation to Arbutus and Genevant for Moderna's infringement within the meaning of 28 U.S.C. § 1498;

C.     An award of Arbutus's and Genevant's reasonable attorneys' fees;

D.     An award of Arbutus's and Genevant's costs and expenses in this action;

E.     An award of pre- and post-judgement interest; and

F.     Such other and further relief as this court may deem just and proper.

Dated: March 19, 2026                    /s/ Adam D. Harber

Adam D. Harber                           Eric C. Wiener
Philip N. Haunschild                     MORRISON & FOERSTER LLP
WILLIAMS & CONNOLLY LLP                  425 Market Street
680 Maine Avenue S.W.                    San Francisco, CA  94105-2482
Washington, DC 20024                     (415) 268-6080
(202) 434-5000                           *Attorney for Plaintiff Arbutus*
*Attorneys for Plaintiff Genevant*       *Biopharma Corporation*
*Sciences GmbH*

---

[104] *Id.*

*Of Counsel:*

David I. Berl
Shaun P. Mahaffy
Matthew W. Lachman
Andrew L. Hoffman
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
*Attorneys for Plaintiff Genevant*
*Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Jack Lane
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-6080
*Attorneys for Plaintiff Arbutus*
*Biopharma Corporation*