**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 26-cv-446 C<br><br>Judge Ryan T. Holte |

**DEFENDANT'S PARTIAL MOTION TO DISMISS PURSUANT TO RCFC 12(b)(1)**


BRETT A. SHUMATE
Assistant Attorney General

SCOTT BOLDEN
Director

PHILIP CHARLES STERNHELL
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Email: philip.c.sternhell@usdoj.gov
Telephone: (202) 353-0522
Facsimile: (202) 307-0345

Of Counsel:
HAYLEY A. DUNN
JHANIEL N. JAMES
KAVYASRI NAGUMOTU
Department of Justice


July 17, 2026

## TABLE OF CONTENTS


I. INTRODUCTION .....1

II. QUESTION PRESENTED .....3

1. Whether the claims pertaining to the Disputed Doses should be dismissed from the Court of Federal Claims Complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") because they are jurisdictionally barred by 28 U.S.C. § 1500 .....3

III. BACKGROUND .....4

A. The COVID-19 Pandemic and the Government's Response .....4

B. The District Court Litigation .....5

C. The Consent Judgment .....7

D. The Federal Circuit Appeal .....8

E. The Court of Federal Claims Case .....9

IV. LEGAL STANDARDS .....10

A. RCFC 12(b)(1) Standard .....10

V. ARGUMENT .....11

A. The Court Lacks Jurisdiction over the Disputed Doses Pursuant to 28 U.S.C. § 1500 .....12

1. The District Court Determined That It Has Jurisdiction over Plaintiffs' Disputed Doses Claims. .....14

2. The Delaware Suit Was Pending at the Time of Filing and the District Court's Consent Judgment and Order Qualifies as a Pending Process. .....16

3. The District Court Disputed Doses Claims Are Substantially the Same as the Disputed Doses Claims in this Case. .....20

4. Section 1500 Contains No Exception for Statutes of Limitations. .....22

5. Resolution of Jurisdiction under Section 1500 Is Ripe. .....24

VI. CONCLUSION .....25

## TABLE OF AUTHORITIES

**Cases**

*Acetris Health, LLC v. United States*,
949 F.3d 719 (Fed. Cir. 2020) ............ 13, 14

*Am. Tobacco Co. v. United States*,
89 Ct. Cl. 438 (1939) ............ 20

*Arbutus Biopharma Corp. v. Moderna, Inc.*,
638 F. Supp. 3d 397 (D. Del. 2022) ............ 5

*Arbutus Biopharma Corp. v. Moderna, Inc.*,
No. 22-252, 2026 WL 266389 (D. Del. Feb. 2, 2026) ............ 7, 15, 17

*Brandt v. United States*,
710 F.3d 1369 (Fed. Cir. 2013) ............ 13, 16, 17, 19

*Corona Coal Co. v. United States*,
263 U.S. 537 (1924) ............ 23

*Croydon Co. v. Unique Furnishings, Ltd.*,
831 F. Supp. 480 (E.D.N.C. 1993) ............ 21

*Ensign–Bickford Aerospace & Def. Co. v. United States*,
118 Fed. Cl. 363 (2014) ............ 13, 21

*eVideo Owners v. United States*,
126 Fed. Cl. 95 (2016), *aff'd*, 680 F. App'x 1004 (Fed. Cir. 2017) ............ 10

*Harbuck v. United States*,
378 F.3d 1324 (Fed. Cir. 2004) ............ 24

*Holley v. United States*,
124 F.3d 1462 (Fed. Cir. 1997) ............ 11

*Ins. Co. of the W. v. United States*,
243 F.3d 1367 (Fed. Cir. 2001) ............ 11

*Keene Corp. v. United States*,
508 U.S. 200 (1993) ............ 20

*Leebcor Servs., LLC v. United States*,
171 Fed. Cl. 14 (2024) ............ *passim*

*Loveladies Harbor, Inc. v. United States*,
27 F.3d 1545 (Fed. Cir. 1994), *overruled in part on other grounds by*
*United States v. Tohono O'Odham Nation*, 563 U.S. 307 (2011) ............ 24

*Madey v. Duke Univ.*,
307 F.3d 1351 (Fed. Cir. 2002) ........................................................................... 11

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
24 F.3d 1368 (Fed. Cir. 1994) ........................................................................... 11

*Matson Nav. Co. v. United States*,
284 U.S. 352 (1932)........................................................................................... 12

*Ministerio Roca Solida v. United States*,
778 F.3d 1351 (Fed. Cir. 2015) ..................................................................... 20, 23

*Nycal Offshore Dev. Co. v. United States*,
148 Fed. Cl. 1 (2020) ..................................................................................... 18, 20

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) ........................................................................... 11

*RHI Holdings, Inc. v. United States*,
142 F.3d 1459 (Fed. Cir. 1998) ........................................................................... 11

*Richmond Screw Anchor Co. v. United States*,
275 U.S. 331 (1928)........................................................................................... 11

*Rocovich v. United States*,
933 F.2d 991 (Fed. Cir. 1991) ........................................................................... 11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)............................................................................................. 11

*Tecon Eng'rs, Inc. v. United States*,
343 F.2d 943 (Ct. Cl. 1965) ............................................................................... 13

*Tindall v. United States*,
No. 2023-1139, 2023 WL 2881312 (Fed. Cir. Apr. 11, 2023) .............................. 13, 14, 23, 24

*Tindall v. United States*,
No. 21-2200T, 2026 WL 1549381 (Fed. Cl. May 31, 2026) .................................................. 15

*Trusted Integration, Inc. v. United States*,
659 F.3d 1159 (Fed. Cir. 2011) ........................................................................... 12

*United States v. Tohono O'Odham Nation*,
563 U.S. 307 (2011)....................................................................................... *passim*

**Statutes**

28 U.S.C. § 1338 .................................................................................................. 2

28 U.S.C. § 1498 ........ *passim*

28 U.S.C. § 1500 ........ *passim*

28 U.S.C. § 2501 ........ 23

**Rules**

RCFC 12(b)(1) ........ 3, 10, 11, 25

RCFC 12(h)(3) ........ 10

**Other Authorities**

Kizzmekia S. Corbett, et al., *SARS-CoV-2 mRNA Vaccine Development Enabled by Prototype Pathogen Preparedness*, 586 NATURE 567 (Aug. 5, 2020) ........ 4

News Release, NIH, NIH clinical trial of investigational vaccine for COVID-19 begins (Mar. 16, 2020), *available at* https://www.nih.gov/news-events/news-releases/nih-clinical-trial-investigational-vaccine-covid-19-begins ........ 4

## TABLE OF EXHIBITS

| Exhibit Number | Title |
|---|---|
| 1 | Excerpted Arbutus Biopharma Corp., Annual Report (Form 10-K) (Mar. 23, 2026) ("Settlement Agreement") |

# I. INTRODUCTION

Plaintiffs Arbutus Biopharma Corporation and Genevant Sciences GmbH ("Plaintiffs") bring claims against the United States ("the Government") alleging infringement of certain patents in connection with two separate categories of COVID-19 vaccine doses: approximately 6 million doses administered directly to United States Government employees ("Government Employee Doses") and approximately 494 million doses administered to others ("Disputed Doses"). Plaintiffs contend that the claims against the Government Employee Doses are within the scope of 28 U.S.C. § 1498 and are properly before this Court. Plaintiffs further contend, having obtained a consent judgment for $1.3 billion that remains pending in district court relating to the Disputed Doses, that claims against the Disputed Doses are ***not*** within the scope of § 1498. But Plaintiffs have included those claims nonetheless in their Complaint. This Court lacks jurisdiction over the Disputed Doses claims and must dismiss these claims under 28 U.S.C. § 1500.

Over three years ago, the Government provided a Statement of Interest in a patent infringement suit between Plaintiffs and Moderna[1] in the United States District Court for the District of Delaware, in which Plaintiffs sought damages for Moderna's alleged use of their lipid nanoparticle technology in Moderna's COVID-19 vaccine. The Statement explained the Government's position that 28 U.S.C. § 1498 applied to all doses procured through the W911QY-20-C-100 contract (the "C-100 Contract"), given the contract's express authorization and consent provisions, and that the exclusive remedy available to Plaintiffs was an action in this Court for their reasonable and entire compensation.[2] Plaintiffs opposed the applicability of § 1498 to the C-

[1] As referred to herein, "Moderna" includes ModernaTX, Inc. and Moderna, Inc.

[2] As set forth in more detail *infra*, the Government has also filed an amicus brief in the pending appeal to the United States Court of Appeals for the Federal Circuit reaffirming the Government's Statement and its position as to the applicability of § 1498 to the C-100 Contract doses.

100 Contract doses, and the district court largely granted Plaintiffs' summary judgment motion on the issue. The district court concluded that doses from the C-100 Contract that were ***not*** administered directly to United States Government Employees (the Disputed Doses) were outside the scope of 28 U.S.C. § 1498(a). Before trial, the court granted the parties' proposed consent judgment and order ("Consent Judgment"), which in part provided that judgment was entered in favor of Plaintiffs and against Moderna as to the Disputed Doses. While that judgment remains pending, Plaintiffs filed suit in this Court seeking compensation for ***all*** C-100 Contract doses—both the 1.2% of doses that went directly to Government employees and, "if necessary," the remaining 98.8% Disputed Doses.

The Government does not dispute that claims against the Government Employee Doses can jurisdictionally be before this Court. But the continued pendency of the district court suit and the operative Delaware judgment present a jurisdictional bar to claims against the Disputed Doses in this suit, at this time. Specifically, Plaintiffs' attempted inclusion of claims for Disputed Doses is barred by 28 U.S.C. § 1500, because the district court's Consent Judgment adjudicating substantially the same Disputed Doses claims was active at the time Plaintiffs filed their Complaint in this Court and remains active today. That Moderna has appealed this judgment, and that the question of the applicability of § 1498 to the Disputed Doses is presently before the Federal Circuit, does not detract from, and in fact supports, the application of § 1500.

This jurisdictional deficiency is well demonstrated by the exclusive nature of the remedy afforded by § 1498. Remedy as to the Disputed Doses claims can only lie with ***either*** the district court, pursuant to 28 U.S.C. § 1338, ***or*** with this Court, pursuant to § 1498. But despite Plaintiffs' Complaint here, another court has entered judgment on substantially the same claims in Plaintiffs' favor for the Disputed Doses and that suit and process remain pending. Plaintiffs' claims related

to the Disputed Doses thus risk duplicative liability and duplicative recovery, in contravention to § 1500 and § 1498. And Plaintiffs' attempt to include the Disputed Doses in the present dispute for the express purpose of circumventing the applicable statute of limitation finds no basis in law.

To be clear, the Government stands by its position that a proper reading of § 1498 results in the Government's assumption of liability as to the Disputed Doses and that the district court's determination to the contrary was in error. Specifically, the district court erred in not dismissing Plaintiffs' claims against Moderna related to the Disputed Doses. Section 1500 is, however, an independent jurisdictional threshold that must be met; Plaintiffs' own choice in pursuing relief in district court over doses the United States had unambiguously explained were covered by 28 U.S.C. § 1498 means that Plaintiffs cannot meet that threshold. And that a suit in this Court may have been jurisdictionally proper ***prior*** to Plaintiffs' district court action, or ***subsequent*** to the dismissal or final resolution of Plaintiffs' district court action, does not mean that the ***present*** suit meets this Court's jurisdictional requirements during the pendency of the Delaware suit and process. While the disposition of Moderna's appeal may influence whether claims directed at the Disputed Doses could or should ultimately be brought in this Court, at this time the Court does not have jurisdiction over them and the Complaint's claims pertaining to the Disputed Doses must be dismissed.

## II. QUESTION PRESENTED

The issue before the Court is:

1. Whether the claims pertaining to the Disputed Doses should be dismissed from the Court of Federal Claims Complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") because they are jurisdictionally barred by 28 U.S.C. § 1500.

## III. BACKGROUND

### A. The COVID-19 Pandemic and the Government's Response

In early January 2020, before the first confirmed case of COVID-19 in the United States, scientists from the National Institutes of Health ("NIH"), in collaboration with researchers from ModernaTX, Inc. and Moderna, Inc. (collectively, "Moderna"), rapidly identified a vaccine candidate that could protect against the novel SARS-CoV-19 virus spreading worldwide. Days after the genomic sequence for the virus was published online, NIH and Moderna finalized their selection of the sequence for a vaccine candidate, which ultimately became mRNA-1273.[3] HHS continued to collaborate on and support mRNA-1273 clinical trials to ensure a vaccine was available as soon as possible.[4]

On August 11, 2020, the U.S. Army, on behalf of HHS and DOD, executed the C-100 Contract—a direct procurement contract for up to 500 million doses of Moderna's vaccine. *Arbutus Biopharma Corp. v. Moderna Inc.*, No. 22-252, D.I. 17-1, Ex. A at 2, 20 (D. Del. May 6, 2022) (referred to as the "Delaware Litigation"). As described in the Statement of Work, the procurement was "in support of the national emergency response to the Coronavirus Disease 2019 (COVID-19) for the United States Government (USG) and the US population." *Id.* at 20. The C-100 Contract provided for a base period of 100 million doses and four options that could be later exercised for 100 million doses each. *Id.* By June 15, 2021, the United States exercised all options under the C-100 Contract, purchasing approximately 500 million doses. The C-100 Contract included two FAR clauses—FAR 52.227-1 and FAR 52.227-1, Alternate I—which provide for the

[3] *See* Kizzmekia S. Corbett, et al., *SARS-CoV-2 mRNA Vaccine Development Enabled by Prototype Pathogen Preparedness*, 586 NATURE 567, 568 (Aug. 5, 2020).

[4] *See* News Release, NIH, NIH clinical trial of investigational vaccine for COVID-19 begins (Mar. 16, 2020), *available at* https://www.nih.gov/news-events/news-releases/nih-clinical-trial-investigational-vaccine-covid-19-begins.

Government's authorization and consent for a contractor's unauthorized use of a patent, as specified by the clauses. *Id.* at 47. The broader of the two, FAR 52.227-1, Alternate I, provides, in pertinent part: "(a) [t]he Government authorizes and consents to all use and manufacture of any invention described in and covered by a United States patent in the performance of this contract or any subcontract at any tier." While the C-100 Contract was modified numerous times, these FAR clauses remained operative throughout the performance of the contract.

**B. The District Court Litigation**

On February 28, 2022, Plaintiffs filed suit against Moderna in the United States District Court for the District of Delaware, alleging that Moderna's COVID-19 mRNA-1273 vaccine and booster infringe the same patents asserted in this case: U.S. Patent Nos. 8,058,069 (ECF 1-1), 8,492,359 (ECF 1-2), 8,822,668 (ECF 1-3), 9,364,435 (ECF 1-4), 9,504,651 (ECF 1-5), and 11,141,378 (ECF 1-6), collectively "Asserted Patents"). Delaware Litigation, D.I. 1 (Feb. 28, 2022). Moderna moved to dismiss pursuant to 28 U.S.C. § 1498, asserting that the C-100 Contract's Statement of Work expressly provided that the doses of vaccine purchased by the Government were "for the Government," and that the inclusion of FAR 52.227-1 and 52.227-1, Alternate I evidenced the Government's express authorization and consent to Moderna's use of unlicensed patents in performance of the C-100 Contract. Delaware Litigation, D.I. 17 (May 6, 2022). The district court found that there were factual disputes as to both elements of the § 1498(a) affirmative defense and denied Moderna's motion. *Arbutus Biopharma Corp. v. Moderna, Inc.*, 638 F. Supp. 3d 397, 408–10 (D. Del. 2022). On the element of authorization and consent, the district court noted that despite the inclusion of FAR 52.227-1 and FAR 52.227-1, Alternate I, the redactions in the submitted contract and the absence the government's views suggested there may be a dispute on this issue, and a more fulsome record would be required to decide the applicability of the defense. *Id.* at 410.

On February 14, 2023, the Government filed a Statement of Interest in the Delaware Litigation, explaining its position that 28 U.S.C. § 1498(a) applied to the C-100 Contract, and that Plaintiffs were limited to pursuing a claim in this Court, which has exclusive jurisdiction over claims arising under § 1498(a). Delaware Litigation, D.I. 49 at 6 (Feb. 14, 2023). The Government asserted that Moderna acted with its express authorization and consent, as evidenced by the inclusion of FAR 52.227-1 and its alternate, FAR 52.227-1, Alternate I. *Id.* at 12–13. As to the "for the Government" element of § 1498(a), the Government explained that, in addition to the inclusion of the FAR clauses providing for express authorization and consent, the C-100 Contract was a direct procurement contract for the allegedly infringing goods between the Government and Moderna—the Government purchased the doses of vaccine from Moderna, meaning that those doses, like any other goods the Government chooses to buy, were for the Government's benefit. *Id.* at 13 ("[W]here the Government elects to include a contract provision expressly providing its authorization and consent, as it has done here, that decision is appropriately viewed as reflecting the Government's determination that the contract is for the Government's benefit."). Following the district court's order requesting the parties and the Government explain the impact, if any, of the Government's Statement of Interest on the litigation, the court reaffirmed its denial of Moderna's partial motion to dismiss under § 1498(a). Delaware Litigation, D.I. 64 (Mar. 10, 2023).

In August 2025, Moderna and Plaintiffs exchanged motions for summary judgment on Moderna's § 1498 defense. Delaware Litigation, D.I. 516 (Aug. 1, 2025); Delaware Litigation, D.I. 572 (Aug. 29, 2025). Plaintiffs successfully argued that Moderna failed to demonstrate that the "for the Government" element was established as required to invoke the § 1498(a) defense. Delaware Litigation, D.I. 572 at 9–17. On February 2, 2026, the district court granted-in-part and

denied-in-part the parties' motions and cross motions for summary judgment on Moderna's § 1498(a) defense. *Arbutus Biopharma Corp. v. Moderna, Inc.*, No. 22-252, 2026 WL 266389, at *6 (D. Del. Feb. 2, 2026). The district court found that "[w]hile section 1498 does not apply to the infringement claims related to the vaccine doses that went to the general public, it does apply to the claims of direct infringement for the vaccine doses that the Government acquired and distributed to its own employees." *Id.*[5] Accordingly, the Court granted Plaintiffs' motion for summary judgment that § 1498(a) did not apply to Disputed Doses, and precluded Moderna from asserting the § 1498(a) defense at trial. Delaware Litigation, D.I. 698 (Feb. 2, 2026).

### C. The Consent Judgment

On March 4, 2026, the district court entered the parties jointly proposed consent judgment and order. Delaware Litigation, D.I. 758 ("Consent Judgment") (Mar. 4, 2026). On the issue of Moderna's § 1498(a) defense, the court entered "judgment in Plaintiffs' favor and against Defendants with respect to the vaccines that did not go directly to United States Government employees" (the Disputed Doses, totaling to 493,757,200) and "judgment in Defendants' favor and against Plaintiffs with respect to the 6,244,340 doses that were directly administered to United States Government employees." *Id.* at 3. All rights to appeal were waived "***except*** Defendants expressly reserve their right to appeal this Court's adjudication with respect to Defendants' Ninth Defense under 28 U.S.C. § 1498(a) set forth above in Paragraph 3a [D.I. 758 at 3]." *Id.* (emphasis added). The parties explained that they "have agreed to the amounts of money owed by Defendants to Plaintiffs upon various dispositions of such an appeal, [however,] their dispute concerning the Defendants' Ninth Defense remains

[5] The district court additionally found that, though § 1498 applied to the Government Employee Doses, Plaintiffs could pursue claims of indirect infringement against Moderna in the Delaware Litigation. *Arbutus Biopharma Corp.*, 2026 WL 266389, at *6.

a definite and concrete dispute touching the Parties' adverse legal interests." *Id.* The Consent Judgment provides "this Court shall retain jurisdiction of this litigation and over the Parties for purposes of enforcement of the provisions of this Consent Judgment and Order." *Id.* at 4.

On March 23, 2026, Arbutus filed a redacted version of the Settlement Agreement between it, Genevant, and Moderna as part of its Form 10-K filings with the United States Securities and Exchange Commission. *See* Ex. 1, Excerpted Arbutus Biopharma Corp., Annual Report (Form 10K), (Mar. 23, 2026) ("Settlement Agreement"). The Settlement Agreement provides that should the district court's decision on the applicability of § 1498(a) to the Disputed Doses ultimately be upheld, or Moderna voluntarily dismisses its Federal Circuit appeal, Moderna is required to pay Arbutus and Genevant $1.3 billion plus applicable interest. *Id.* at § 3.2.1–.3. Should a final, non-appealable judgment result in § 1498(a) applying to some subset of the Disputed Doses, Moderna will be required to pay a pro-rated amount of $1.3 billion. *Id.* at § 3.2.2. If a final, non-appealable judgment by the Federal Circuit or the United States Supreme Court reverses the district court's decision on the applicability of § 1498(a) to the Disputed Doses in its entirety, Moderna will receive a release for the Disputed Doses as described in § 2.1. *Id.*

**D. The Federal Circuit Appeal**

On March 24, 2026, Moderna filed its Notice of Appeal to the Federal Circuit in the district court case, and on March 30, 2026, the Federal Circuit docketed the appeal. *Arbutus Biopharma Corp. v. Moderna, Inc.*, No. 26-1581, D.I. 1 (Fed. Cir. Mar. 30, 2026) (referred to as "Federal Circuit Appeal"); Delaware Litigation, D.I. 761 (Mar. 24, 2026). The Docketing Statements provide that the issue to be raised on appeal is the affirmance or reversal of the district court's summary judgment order as to Moderna's § 1498 defense and the related portions of the consent judgment entered on March 4, 2026. Federal Circuit Appeal, D.I. 5 (Apr. 13, 2026); Federal

Circuit Appeal, D.I. 8 (May 12, 2026). The present case is identified as a "related case" by both parties. Federal Circuit Appeal, D.I. 4 (Apr. 7, 2026); Federal Circuit Appeal, D.I. 9 (May 12, 2026).

On May 29, 2026, Moderna filed its opening appellant brief, explaining why § 1498 should apply to the Disputed Doses and that the district court's decision should be reversed. Federal Circuit Appeal, D.I. 13 (May 29, 2026). The Government filed an amicus brief in support of Moderna on June 19, 2026. Federal Circuit Appeal, D.I. 29 (June 19, 2026). On July 8, 2026, Plaintiff filed its responsive appellee brief, affirming their position that "the district court correctly held that 28 U.S.C. § 1498(a) does not bar Plaintiffs' patent infringement claims against Moderna for doses sold under the C-100 Contract that were provided for the benefit of the public, and not the federal government." Federal Circuit Appeal, D.I. 33 at 22 (July 8, 2026). Specifically, Plaintiffs contend that the Federal Circuit should affirm the district court's judgment entitling them to collect—from Moderna—on their claims related to the Disputed Doses. *Id.* Pursuant to Federal Circuit rules, Moderna's reply brief is scheduled to be filed on July 29, 2026.

### E. The Court of Federal Claims Case

On March 19, 2026, Plaintiffs filed suit against the Government, alleging unlicensed use of the Asserted Patents. Compl. ¶ 15. Specifically, Plaintiffs contend that the "manufacture or use of Moderna's mRNA-1273 COVID-19 mRNA LNP vaccine product ('Moderna's COVID-19 vaccine') or any supplemental or booster COVID-19 mRNA LNP vaccine product (collectively, the 'Accused Product')" procured under the C-100 Contract infringe the Asserted Patents, and that Plaintiffs are entitled to reasonable and entire compensation for the Accused Products. *Id.* at ¶ 14.

Plaintiffs' Complaint categorizes their claims into two groups of Accused Products within the C-100 Contract, which correspond to the district court's consent judgment: (1) 6,244,340 Government Employee Doses and (2) approximately 494 million remaining Disputed Doses from

the C-100 Contract that did not go to Government employees. *Id.* at ¶ 13. The Government moves to dismiss Plaintiffs' claims as to the approximately 494 million Disputed Doses, representing 98.8% of the doses accused of infringement.

Plaintiffs have undisputedly attempted to include the Disputed Doses as part of the present action, making the Government's Motion ripe for resolution. The Complaint's definition of "Accused Products" incorporates the Disputed Doses into each allegation of infringement. *Id.* at ¶¶ 14, 89–90, 104–05, 121–22, 141–42, 155–56, 171–72. And Plaintiffs' Complaint expressly purports "to preserve their right to seek damages from the United States, if necessary, prior to the running of any statute of limitations for any doses sold pursuant to the C-100 Contract that are ultimately deemed to be subject to 28 U.S.C. § 1498(a)." *Id.* at ¶ 13. Plaintiffs state that they "do not convey or imply that 28 U.S.C. § 1498(a) applies to any sales of Moderna's COVID-19 vaccine to the United States Government or that any damages for such sales should or must be obtained from the United States, rather than Moderna, except with respect to the Government Employee Doses." *Id.* Despite noting that the district court litigation resulted in a judgment in its favor, *see id.* at ¶ 23, Plaintiffs state that the "Complaint is borne out of necessity at this time, in light of the positions that the United States and Moderna have taken in the [Delaware Litigation], which may not be finally resolved on appeal before the time to file the Complaint has expired." *Id.* at ¶ 13.

## IV. LEGAL STANDARDS

### A. RCFC 12(b)(1) Standard

Under RCFC 12(b)(1), the Court must dismiss a claim if it lacks jurisdiction over the subject matter of that claim. *eVideo Owners v. United States*, 126 Fed. Cl. 95, 101 (2016), *aff'd*, 680 F. App'x 1004 (Fed. Cir. 2017); *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Whether the Court has jurisdiction to decide a claim is a "threshold matter." *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94 (1998). The party seeking to invoke a court's subject matter jurisdiction must prove that such jurisdiction exists by a preponderance of the evidence. *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1372 (Fed. Cir. 1994); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).

The United States is immune from suit unless it has waived its immunity. *Ins. Co. of the W. v. United States*, 243 F.3d 1367, 1372 (Fed. Cir. 2001). Sovereign immunity is a jurisdictional bar if the United States has not consented to be sued on a particular claim. *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998). Section 1498(a) functions as both a waiver of the Government's sovereign immunity and an assumption of liability by the Government from third-party entities in certain circumstances. *See Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 343–44 (1928); *Madey v. Duke Univ.*, 307 F.3d 1351, 1359 (Fed. Cir. 2002). As a waiver of sovereign immunity, § 1498(a) must be strictly construed in favor of the Government. *See, e.g.*, *Madey*, 307 F.3d at 1359.

## V. ARGUMENT

The Complaint's Claims for the Disputed Doses should be dismissed pursuant to RCFC 12(b)(1). Title 28 U.S.C. § 1500 divests the Court of jurisdiction over claims for the Disputed Doses because, at the time of filing the Complaint in this Court, the district court's jurisdiction over and disposition of these doses was (and is still) operative.

Plaintiffs themselves acknowledge the pendency of the Delaware Litigation—at least with respect to the appeal of the active Consent Judgment—and have identified in their Federal Circuit filings this case as related. *See* Delaware Litigation, D.I. 758 at 3 ("[The § 1498 defense] remains

a definite and concrete dispute touching the Parties' adverse legal interests."); Federal Circuit Appeal, D.I. 9 (May 12, 2026). Moreover, the *status quo* of the Delaware Litigation is that jurisdiction over the Disputed Doses is with the district court—not this Court—and Plaintiffs have obtained a judgment of ***$1.3 billion*** in their favor with respect to the Disputed Doses. Unless and until Moderna prevails on its appeal, the district court's erroneous ruling that § 1498 does not apply to the Disputed Doses stands and Plaintiffs are entitled to collect $1.3 billion from Moderna for those claims.

As set forth below, all requirements of § 1500 are met and this Court lacks jurisdiction over the Disputed Doses at this time. Plaintiffs' claims against these doses must be dismissed.[6]

### A. The Court Lacks Jurisdiction over the Disputed Doses Pursuant to 28 U.S.C. § 1500.

Section 1500 was created to prevent plaintiffs from litigating similar cases against the Government in multiple fora. *See Matson Nav. Co. v. United States*, 284 U.S. 352, 356 (1932); *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) ("[T]he statute was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories."). In support of this purpose, the plain language of the statute provides that the Court of Federal Claims:

> [S]hall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

[6] As discussed below, any later effort to assert claims against the Disputed Doses will be subject to the applicable statute of limitations and jurisdiction of the Court.

The Federal Circuit's two-part inquiry into the applicability of § 1500 when the activity allegedly occurred with government authority asks "(1) whether there is an earlier-filed suit or process pending in another court and, if so, (2) whether the claims asserted in the earlier-filed case are for or in respect to the same claims asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (internal quotations and citations omitted); *see Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943, 949 (Ct. Cl. 1965); *see Ensign–Bickford Aerospace & Def. Co. v. United States*, 118 Fed. Cl. 363, 368 (2014). This Court, following the Federal Circuit's decisions in *Acetris* and *Tindall*, has additionally asked as a predicate question whether the court of first filing had "colorable jurisdiction" over the claim. *See Leebcor Servs., LLC v. United States*, 171 Fed. Cl. 14, 23 (2024) (first citing *Acetris Health, LLC v. United States*, 949 F.3d 719 (Fed. Cir. 2020) then citing *Tindall v. United States*, No. 2023-1139, 2023 WL 2881312 (Fed. Cir. Apr. 11, 2023)).

To the Government's understanding, this case presents unique circumstances not yet addressed in § 1500 jurisprudence. Namely, prevailing parties who successfully argued for and obtained the district court's exclusive jurisdiction over the same claims for the Disputed Doses now seek to avail themselves of this Court's mutually exclusive jurisdiction. They do so notwithstanding a summary judgment opinion and active consent judgment in the district court—that Plaintiffs advocated for—stating the opposite. This approach is in contravention with the historical justification of § 1500, which was to curb duplicative lawsuits and "address the problem that judgments in suits against officers were not preclusive in suits against the United States." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 311, 315 (2011).

1. The District Court Determined That It Has Jurisdiction over Plaintiffs' Disputed Doses Claims.

Before turning to questions of whether an earlier-filed "suit or process" was pending and whether that earlier action was "for or in respect to" the Court of Federal Claims matter, this Court in *Leebcor* examined the jurisdiction of the court of first filing as a threshold consideration. *Leebcor*, 171 Fed. Cl. at 23–24. Specifically, this Court looked to the Federal Circuit's precedent in *Acetris* and *Tindall* "for the proposition § 1500 does not apply when the court of first filing did not have jurisdiction." *Id.* at 24. Here, the district court determined that it has jurisdiction and entered judgment reflecting the same, thus confirming that § 1500 can apply.

In *Acetris*, the Federal Circuit considered whether § 1500 barred a case in this Court related to the Department of Veterans Affairs' interpretation of the Trade Agreements Act of 1979 and the Federal Acquisition Regulations in light of an earlier-filed case in the Court of International Trade ("CIT") challenging a Customs and Border Protection's ("CBP") country-of-origin determination. *Acetris*, 949 F.3d at 725–26. The Court determined that the earlier-filed case did not bar jurisdiction in this Court because the CIT lacked "colorable jurisdiction" to review the plaintiff's claims. *Id.* at 729 ("The CIT thus lacks colorable jurisdiction to review the merits of a CBP decision on Acetris' FAR compliance (which the CBP did not have authority to make in the first instance)."). Similarly in *Tindall*, though the Federal Circuit did not ultimately reach the question of whether § 1500 barred a case in this Court as a result of an earlier-filed case in Tax Court, the court noted that "if the Tax Court lacked colorable authority to consider Mr. Tindall's appeal . . . § 1500 would not be a bar." *Tindall*, 2023 WL 2881312, at *4 ("But even assuming the suits were based on the same 'act or contract'—the IRS's final award letter—it is not clear that

the Tax Court had colorable jurisdiction to review Mr. Tindall's filing.").[7] And based on this precedent, this Court in *Leebcor* determined that § 1500 could not apply because "[w]here—as here—the first court dismissed for lack of subject matter jurisdiction, there is little dispute the court of first filing 'lacked colorable authority' or 'colorable jurisdiction' to hear plaintiff's claims." *Leebcor*, 171 Fed. Cl. at 24.

A straightforward application of this Court's reasoning in *Leebcor* requires a different result here. The Delaware district court not only determined that it had jurisdiction over the Disputed Doses claims at summary judgment and that this Court's jurisdictional statute does not apply to the Disputed Doses, *Arbutus Biopharma Corp.*, 2026 WL 266389, at *6, it also entered a final Consent Judgment and order memorializing the same, Delaware Litigation, D.I. 758 at 3. While the Government disagrees with the district court's reasoning, the Consent Judgment—as it stands—resolves Plaintiffs' claims with respect to the Disputed Doses and the district court expressly retained "jurisdiction of this litigation and over the parties for purposes of enforcement of the provisions of this Consent Judgment and Order." *Id.* at 4. Moreover, Plaintiffs plainly provide their view that jurisdiction is properly with the district court. Compl. ¶¶ 13, 76. And they reaffirmed that view one week ago, telling the Federal Circuit that the district court's judgment was correct and that the Consent Judgment should be affirmed. Federal Circuit Appeal, D.I. 33 at 21. Thus, in contrast to *Leebcor*, *Acetris*, and *Tindall*, the district court—at least at the time of filing the Complaint—had "colorable jurisdiction" over Plaintiffs' claims.

[7] Following the Federal Circuit's remand in *Tindall*, this Court recently issued its opinion that § 1500 did not bar Mr. Tindall's later-filed Court of Federal Claims suit because the Tax Court in the earlier-filed suit lacked colorable jurisdiction. *Tindall v. United States*, No. 21-2200T, 2026 WL 1549381, at *27 (Fed. Cl. May 31, 2026).

2. <u>The Delaware Suit Was Pending at the Time of Filing and the District Court's Consent Judgment and Order Qualifies as a Pending Process.</u>

Plaintiffs' claims against the Disputed Doses in district court are both an earlier-filed suit and a process pending in another court. Plaintiffs filed their case against Moderna in February 2022, more than four years before filing suit in this Court. Delaware Litigation, D.I. 1 (Feb. 28, 2022). The district court entered a Consent Judgment on March 4, 2026, that, as it stands, resolves Plaintiffs' claims with respect to the Disputed Doses. Delaware Litigation, D.I. 758. And at the time of filing the Complaint in this Court, the district court's Consent Judgment controlled (and still does), meaning the district court had and maintains jurisdiction over the Disputed Doses claims and those dose claims were not within § 1498(a). That Moderna had not yet filed its notice of appeal related to the district court's determination with respect to the Disputed Doses does nothing to alter that pending process.

The Federal Circuit's ruling in *Brandt* is instructive for the Court's analysis here and adherence to the principles articulated in *Brandt* requires dismissal of the Disputed Doses claims. Facing a declaratory judgment claim in the District of Wyoming that title to an abandoned right-of-way vested in the government, Brandt filed a counterclaim alleging a taking for which just compensation was owed. *Brandt*, 710 F.3d at 1371. Brandt acknowledged that his takings claim exceeded the $10,000 district court threshold and requested that his claim be transferred to this Court, but the parties ultimately agreed to stay the takings counterclaim while the quiet title claims proceeded. *Id.* at 1371. After finding in the Government's favor with respect to the quiet title claim, the district court dismissed Brandt's taking claim for lack of jurisdiction. *Id*. at 1372. One day prior to filing his notice of appeal with respect to the district court's judgment, Brandt filed suit in the Court of Federal Claims. This Court found in pertinent part that, pursuant to § 1500,

plaintiff's pending period to appeal the district court case divested the Court of its jurisdiction and dismissed the suit. *Id.* at 1373.

On appeal of this Court's dismissal, the Government argued that the district court action was still "pending" for the purposes of § 1500 because plaintiff's time to file an appeal had not yet lapsed before he filed the Court of Federal Claims suit. *Id.* at 1376. As the Federal Circuit noted, "[a]lthough the parties agree that a claim is pending when a notice of appeal is filed and docketed, they disagree as to whether a dismissed claim is a 'pending' claim under the statute." *Id.* at 1378. The appellate court rejected the Government's argument, holding instead that "once a claim is ***dismissed or denied***, it is no longer 'pending' for § 1500 purposes until a motion for reconsideration or notice of appeal is filed." *Id.* at 1379–80 (emphasis added).

While the Federal Circuit there determined that § 1500 did not deprive the Court of Federal Claims of jurisdiction over Brandt's complaint—because "once a claim is dismissed or denied, it is no longer 'pending' for § 1500 purposes until a motion for reconsideration or notice of appeal is filed"—the clear corollary is that § 1500 ***does*** apply where a district court found it has jurisdiction. *Id.* Plaintiffs here filed their Complaint in the window between the district court's judgment and the notice of appeal but with a critical difference to *Brandt*—the district court had already determined that it, and not this Court, had jurisdiction over the Disputed Doses claims. *Arbutus Biopharma Corp.*, 2026 WL 266389, at *6; Delaware Litigation, D.I. 758. And although the Consent Judgment is a "final" judgment for the purposes of appeal, the finality of this judgment did not extinguish the suit and the district court retained jurisdiction for the purposes of administering that judgment. Delaware Litigation, D.I. 758 at 4. Moderna's appeal of the final judgment—and timing thereof—thus does not alter the analysis or outcome. If anything, it confirms that the suit in Delaware related to the Disputed Doses remains pending. Both while

Moderna's period to notice an appeal ran and during the pendency of the appeal itself, the *status quo* remains that a $1.3 billion judgment exists to extinguish claims against those doses.

Additionally, there should be no dispute that the Consent Judgment is a pending process within an ongoing suit. In *Nycal Offshore Development Co. v. United States*, this Court carefully considered both the text and history of § 1500 in arriving at a construction of the term "process" as "the entire course of legal proceedings." 148 Fed. Cl. 1, 15 (2020). While the Court determined that a motion for intervention was not a "process" within the meaning of § 1500, that same analysis confirms that Plaintiffs' suit and process against Moderna was pending at the time they filed their Complaint here. In particular, the plaintiff in *Nycal* had merely filed a motion to intervene but had not been granted status as an intervenor at the time of filing their Court of Federal Claims complaint. *Id.* at 17–18 ("In this case, the district court's denial of Nycal's motion to intervene must therefore be less than 'process,' because Nycal was never granted entry into the original 'suit.' Since Nycal did not become party to the preexisting 'suit,' it therefore could not have a pending 'process,' as 'process' under the meaning of § 1500 first requires the existence of, and plaintiff's participation in, a 'suit.'"). And the filing of its notice of appeal on that issue did not alter the *status quo* that the plaintiff was not part of the district court litigation. *Id.* at 18 ("Since Nycal did not become party to the preexisting 'suit,' it therefore could not have a pending "process," as "process" under the meaning of § 1500 first requires the existence of, and plaintiff's participation in, a 'suit.'"). Here, in contrast, it was Plaintiffs who directly initiated litigation in district court, where both that suit and the process of the Consent Judgment remain pending.

Likewise, in *Leebcor*, this Court found that a plaintiff's pending appeal of a district court's dismissal for lack of jurisdiction did not divest the Court of jurisdiction over a plaintiff's later filed Court of Federal Claims suit pursuant to § 1500. 171 Fed. Cl. at 24–25. The Court looked to the

Federal Circuit's guidance in *Brandt*, which specified that "once a claim is dismissed or denied, it is no longer 'pending' for § 1500 purposes until a motion for reconsideration or notice of appeal is filed." *Id.* at 31 (quoting *Brandt*, 710 F.3d at 1379–80). And in *Leebcor*, "although plaintiff had an appeal pending in the Fourth Circuit at the time of filing in this case, it was not equal to, or based on the same operative facts as, the instant case." *Id.* Specifically, "when plaintiff appealed the district court's dismissal for lack of subject matter jurisdiction of that dissimilar case—a request for an injunction under the ADA—the pending appeal was likewise dissimilar to this case for § 1500 purposes." *Id.*

Here, however, the district court expressly exercised jurisdiction over claims against the Disputed Doses, and the Consent Judgment remains a pending process within an active suit in the district court. Delaware Litigation, D.I. 758. Plaintiffs' claim that "The Moderna Action does not alter this Court's jurisdiction to hear this case, as the Delaware district court has entered judgment in that action [and] there is no pending appeal from that action," Compl. ¶ 23, misunderstands this Court's precedent in *Leebcor* and *Nycal* as the district court has exercised—as opposed to dismissed or denied—jurisdiction. That Moderna had not yet filed its notice of appeal does not alter the district court's finding of jurisdiction over the Disputed Doses or the pendency of the Consent Judgment process. And to the extent Plaintiffs' statement is meant to contend that the Consent Judgment—as it stands—resolves Plaintiffs' claims against the Disputed Doses fully and with finality, the exclusivity of remedy under § 1498 would preclude their Complaint against those same doses here.[8]

[8] To be clear, while Plaintiffs' recovery of the $1.3 billion owed to it under the Consent Judgment for the Disputed Doses would preclude any recovery from the Government under § 1498 related to those doses, the Government expressly rejects any contention that any concessions made by Moderna with respect to liability bind the Government in this matter—especially in light of the

3. The District Court Disputed Doses Claims Are Substantially the Same as the Disputed Doses Claims in this Case.

The second prong of the § 1500 inquiry is also readily met. The Supreme Court has explained that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit," *Tohono O'Odham Nation*, 563 U.S. at 317, or "the legal theories" asserted, *Keene Corp. v. United States*, 508 U.S. 200, 211–12 (1993) (citing *Am. Tobacco Co. v. United States*, 89 Ct. Cl. 438, 440 (1939) (finding that a claim characterized as a tort in one court and as a contract claim in another court were considered the same for purposes of § 1500)). The test, as formulated by the Supreme Court, is thus whether the operative facts are substantially the same between the two cases, regardless of the relief sought and the claims pleaded. *Tohono O'Odham Nation*, 563 U.S. at 315–16; *Keene Corp.*, 508 U.S. at 201; *see Ministerio Roca Solida v. United States*, 778 F.3d 1351, 1353–54 (Fed. Cir. 2015) (affirming a finding that two suits were based on the same operative facts, despite different claims pleaded, when the claims in both actions arose from plaintiff's ownership of land). As this Court explained in *Nycal*: "In *Tohono O'Odham Nation*, the Supreme Court viewed 'cause of action' [as] synonymous with 'case' and 'claim' as the necessary component to divest this Court of jurisdiction." *Nycal*, 148 Fed. Cl. at 18 n.9 (citing *Tohono O'Odham Nation*, 563 U.S. at 312).

A finding that Plaintiffs' claims against the Disputed Doses in district court are "for or in respect to the same claim" is well in accordance with this Court's precedent. Plaintiffs plainly admit that the Disputed Doses claimed in this case are "for or in respect to the same claim" as

---

limited waiver of sovereign immunity set forth in § 1498. Both in relation to claims against the Government Employee Doses and claims against the Disputed Doses—should those claims proceed in this Court—all issues relating to the merits of Plaintiffs' claims and the Government's defenses must be presented to, and addressed by, the Court of Federal Claims.

those subject to the district court's summary judgment and consent judgment orders and on appeal given their intention "to preserve their right to seek damages from the United States, if necessary, prior to the running of any applicable statute of limitations for any doses sold pursuant to the C-100 Contract that are ultimately deemed to be subject to 28 U.S.C. § 1498(a)." Compl. ¶ 13. Plaintiffs themselves acknowledge the pendency of the imminent appeal in the active consent judgment and have admitted in their initial Federal Circuit filings that this case is related. *See* Delaware Litigation, D.I. 758 at 3 ("[The § 1498 defense] remains a definite and concrete dispute touching the Parties' adverse legal interests."); Federal Circuit Appeal, D.I. 9 (identifying this case as a related case to the Federal Circuit appeal). And they have maintained on appeal to the Federal Circuit that the district court's judgment should be affirmed, Federal Circuit Appeal, D.I. 33, which would extinguish any claims against the Disputed Doses in this Court, Ex. 1 at §§ 2.1, 3.2.

Nor could there be any dispute that Plaintiffs' claims in Delaware were against defendants who were "acting or professing to act, directly or indirectly under the authority of the United States" as required by § 1500. The Supreme Court in *Tohono O'Odham Nation* interpreted § 1500 as applying to a person who is "claiming or wielding federal authority in the relevant factual context." 563 U.S. at 313. This interpretation was predicated on the broad language of this provision, including its reference to a person "professing to act" on behalf of the United States, as well as the Court's view of its intended purpose, which according to the Court was to "robust[ly] respon[d]" to the problem of duplicative claims against the government. *Id*. at 312. Decisions of other courts acknowledge, explicitly and implicitly, that private defendants professing to act as proxies for the government fall within § 1500. *See, e.g., Ensign–Bickford Aerospace & Def. Co.*, 118 Fed. Cl. at 369; *Croydon Co. v. Unique Furnishings, Ltd.*, 831 F. Supp. 480, 489 (E.D.N.C. 1993).

Moreover, the jurisdictional premise of their suit here is that Moderna—in performing the same actions accused of infringement in the district court—was acting under the authority of the United States. Compl. ¶ 22 ("The Government, through contractors that the Government contends were acting 'for the Government' and with the 'authorization and consent' of the Government, including ModernaTX, Inc. and Moderna, Inc., has used or manufactured products . . . in a manner that would subject the Government to liability for direct patent infringement if the United States was a private party."). Plaintiffs allege, and there is no dispute, that the contract at the center of Plaintiffs' Complaint "incorporated by reference certain 'authorization and consent' clauses, including FAR clauses 52.227-1 and 52.227-1 [Alternate I]." *Id.* at ¶ 70 ("Pursuant to this C-100 Contract, Moderna sold at least 500 million doses of the Accused Product to the United States Government, and doses sold to the Unites States have in turn been distributed and administered around the nation"). Thus, while Plaintiffs are correct in alleging that "the United States was not a defendant in [the district court] action," *id.* at ¶ 23, that is no impediment to the application of § 1500.

4. <u>Section 1500 Contains No Exception for Statutes of Limitations.</u>

Despite Plaintiffs' contention that their claims against the Disputed Doses are "to preserve their right to seek damages from the United States, if necessary, prior to the running of any applicable statute of limitations," *id.* at ¶ 13, there is no textual or judicially created exception to § 1500 for the purposes of avoiding a statute of limitations. Plaintiffs have been aware for over three years that Moderna and the Government contended § 1498(a) applied to the Disputed Doses, yet Plaintiffs chose to maintain their district court position. *Id.* at ¶¶ 72–74. And having obtained a summary judgment ruling in their favor that § 1498 does not apply to the Disputed Doses—coupled with a Consent Judgment that entitles them to $1.3 billion for their Disputed Doses claims—Plaintiffs have no basis to claim damages for the same Disputed Doses in this Court while

the district court Consent Judgment remains pending. While Plaintiffs may have concerns related to applicable statutes of limitations related to the Disputed Doses claims, it is Plaintiffs who have created any such problem by filing suit in this Court before resolution of their claim against Moderna in the district court.

Simply, this Court is not—and cannot be—a placeholder.[9] The jurisdictional requirement of § 1500 is both separate from and complementary to the requirements of § 1498: § 1500 requires that a plaintiff pursue an action in one forum or the other, and this Court's jurisdiction over patent infringement actions pursuant to § 1498(a) is mutually exclusive to the district court's jurisdiction. Plaintiffs cannot claim that this Court has jurisdiction over the Disputed Doses by virtue of the Government's Statement of Interest in the district court case while they simultaneously have an operative consent judgment for substantially the same claims from the district court and argue to the Federal Circuit to affirm the district court's decision that this Court does not have jurisdiction over the Disputed Doses. The Government acknowledges that the result of Moderna's appeal of the district court Consent Judgment may impact Plaintiffs' ability to seek recovery from the Government upon conclusion of that appeal. But that is the result of Plaintiffs' own litigation choices. There is no textual basis in § 1500 for this Court to exercise jurisdiction over the Disputed Doses—which it does not otherwise have under § 1500—to avoid a statute of limitation expiring. *See Tohono O'Odham Nation*, 563 U.S. at 316–17; *Corona Coal Co. v. United States*, 263 U.S. 537, 540 (1924); *Ministerio Roca Solida*, 778 F.3d at 1356–57, *cert. denied*, 557 U.S. 974 (2015).

[9] The Government expressly maintains that any later attempts to bring the Disputed Doses into the present matter—whether via amendment or refiling of a complaint—are and will be subject to applicable six-year statute of limitations. *See Tindall*, 2023 WL 2881312, at *4 ("If the Tax Court case is final and § 1500 applies, Mr. Tindall may file a new suit in the Claims Court within the six-year statute of limitations if he wishes to pursue his claims. *See* 28 U.S.C. § 2501.").

5. Resolution of Jurisdiction under Section 1500 Is Ripe.

With Plaintiffs' contention that claims against the Disputed Doses are presently part of this suit, the jurisdictional dispute cannot be deferred until later. "The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1548 (Fed. Cir. 1994), *overruled in part on other grounds by Tohono O'Odham Nation*, 563 U.S. at 315. As the Federal Circuit noted in *Tindall*, "there is a substantial difference between ripeness and § 1500." *Tindall*, 2023 WL 2881312, at *4. "If § 1500 applies, final resolution of the [earlier case] would not vest the Claims Court with jurisdiction if the former suit were still pending when the Claims Court case was filed." *Id.* (citing *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004)).

Moreover, application of § 1500 to the Disputed Doses claims is fully in accordance with the principles the Supreme Court set forth in *Tohono*, that "Congress first enacted . . . § 1500 to curb duplicate lawsuits." *Tohono O'Odham Nation*, 563 U.S. at 311. Plaintiffs acknowledge that they cannot recover on claims related to Disputed Doses from both the Government and Moderna and that the Consent Judgment—if left undisturbed by the Federal Circuit—would bar recovery on those claims in this Court. *See e.g.,* Compl. ¶ 13 ("By filing this Complaint Plaintiffs do not convey or imply that 28 U.S.C. § 1498(a) applies to any sales of Moderna's COVID-19 vaccine to the United States Government or that any damages for such sales should or must be obtained from the United States, rather than Moderna, except with respect to the Government Employee Doses."). There is thus no impediment to the Court deciding now that, when measured at the time of Plaintiffs' Complaint and today, § 1500 deprives this Court of jurisdiction over the Disputed Doses claims.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' claims of infringement for the Disputed Doses are barred by § 1500. To fulfill the express purpose of the statute to avoid duplicative claims and recovery against the Government, those claims should be dismissed pursuant to RCFC 12(b)(1).

Respectfully submitted:

BRETT A. SHUMATE
Assistant Attorney General

SCOTT BOLDEN
Director

/s/ *Philip Charles Sternhell*
PHILIP CHARLES STERNHELL
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Email: philip.c.sternhell@usdoj.gov
Telephone: (202) 353-0522
Facsimile: (202) 307-0345

Of Counsel:
HAYLEY A. DUNN
JHANIEL N. JAMES
KAVYASRI NAGUMOTU
Department of Justice

July 17, 2026