**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant*.

No. 26-cv-446
Judge Ryan T. Holte

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**DEFENDANT'S PARTIAL MOTION TO DISMISS**

Adam D. Harber*
David I. Berl (*pro hac vice*)
Matthew W. Lachman (*pro hac vice*)
Philip Haunschild
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
aharber@wc.com
dberl@wc.com
mlachman@wc.com
phaunschild@wc.com
*Attorneys for Plaintiff Genevant Sciences GmbH*
** Lead Attorney*

Eric C. Wiener
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-6080
ewiener@mofo.com
*Attorney for Plaintiff Arbutus Biopharma Corporation*

*Of Counsel:*

Shaun P. Mahaffy
Andrew L. Hoffman
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
*Attorneys for Plaintiff Genevant Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Jack Lane
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-6080
*Attorneys for Plaintiff Arbutus Biopharma Corporation*

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

QUESTION PRESENTED ..... 3

STATEMENT OF THE CASE ..... 3

A. Plaintiffs' Lipid Nanoparticle Technology and its unlicensed use by Moderna during the COVID-19 pandemic. ..... 3

B. Plaintiffs' district court litigation. ..... 4

C. Plaintiffs' Complaint in this Court. ..... 6

D. Moderna's Federal Circuit appeal. ..... 7

LEGAL STANDARD ..... 8

ARGUMENT ..... 8

I. Section 1500 does not apply to Plaintiffs' claims. ..... 8

A. Plaintiffs' claims here and the claims in the Moderna Action are not the "same claim." ..... 9

1. Plaintiffs' claims against Moderna in district court require different, and contradictory, proof compared to their claims here. ..... 9

2. Historical res judicata principles confirm that Plaintiffs' claims are not the same claim. ..... 11

3. The statements the government points to from Plaintiffs' pleadings do not render Plaintiffs' claims the "same claim." ..... 13

B. Plaintiffs' claims in the Moderna Action were against private contractors, not the government or its agents. ..... 14

C. Plaintiffs' claims in the Moderna Action were not pending when Plaintiffs filed their Complaint here. ..... 18

1. Federal Circuit precedent confirms no claims are pending for purposes of § 1500 in the period between final judgment and notice of appeal. ..... 18

2. The government's effort to narrow *Brandt* contradicts the case and the text of § 1500. ....20

3. The Moderna Action was closed, not "active," when Plaintiffs filed their Complaint. ....21

II. The government offers no basis to depart from the plain text of § 1500 and precedent applying it. ....22

A. The district court's conclusion that it had jurisdiction does not foreclose jurisdiction in this Court. ....22

B. The government's policy concerns are misplaced because its motion only affects the quantum of damages. ....24

C. Section 1500 is not a license to take advantage of the statute of limitations. ....26

CONCLUSION ....28

## TABLE OF AUTHORITIES

### CASES

*Acetris Health, LLC v. United States*,
138 Fed. Cl. 43 (2018) ....................................................................................................12

*Acetris Health, LLC v. United States*,
949 F.3d 719 (Fed. Cir. 2020)..................................................................................12, 23

*Adv. Software Design Corp. v. Fed. Rsrv. Bank of St. Louis*,
583 F.3d 1371 (Fed. Cir. 2009)..........................................................................................10

*Arbutus v. Moderna*,
638 F. Supp. 3d 397 (D. Del. 2022).......................................................................................5

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964)...........................................................................................................25

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) ............................................................................................26

*Bolduc v. United States*,
72 Fed. Cl. 187 (2006) ......................................................................................................19

*Brandt v. United States*,
710 F.3d 1369 (Fed. Cir. 2013)..............................................................8, 9, 18, 19, 20, 21

*Croydon Co. v. Unique Furnishings, Ltd.*,
831 F. Supp. 480 (E.D.N.C. 1993).....................................................................................17

*d'Abrera v. United States*,
78 Fed. Cl. 51 (2007) ...................................................................................9, 10, 11, 15

*Def. Distrib. & Second Amend. Found. v. United States*,
No. 23-849, 2024 WL 1092509 (Fed. Cl. Mar. 13, 2024) ...............................................27

*Ensign-Bickford Aerospace & Defense Co. v. United States*,
118 Fed. Cl. 363 (2014) ..............................................................................................17, 25

*Epic Metals Corp. v. H.H. Robertson Co.*,
870 F.2d 1574 (Fed. Cir. 1989)..........................................................................................21

*Fire-Trol Holdings, LLC v. United States*,
65 Fed. Cl. 32 (2005) ........................................................................................................19

*First Nat'l S.S. Co. v. United States*,
90 Ct. Cl. 632 (1940) ........................................................................................................16

*Glenayre Elecs., Inc. v. Jackson*,
443 F.3d 851 (Fed. Cir. 2006)....................25

*Healthestate, LLC v. United States*,
149 Fed. Cl. 244 (2020)....................9, 11, 15, 25

*Heartland By-Prods., Inc. v. United States*,
424 F.3d 1244 (Fed. Cir. 2005)....................22

*Helferich Pat. Licensing, LLC v. N.Y. Times Co.*,
778 F.3d 1293 (Fed. Cir. 2015)....................25

*Idaho Power Co. v. United States*,
105 Fed. Cl. 141 (2012)....................27

*Jang v. Bos. Sci. Corp.*,
532 F.3d 1330 (Fed. Cir. 2008)....................21

*Keeler v. Std. Folding Bed Co.*,
157 U.S. 659 (1895)....................25

*Keene Corp. v. United States*,
508 U.S. 200 (1993)....................18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)....................22

*Leebcor Servs., LLC v. United States*,
171 Fed. Cl. 14 (2024)....................8, 9, 14, 23, 27

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
734 F.3d 1361 (Fed. Cir. 2013)....................25

*Limone v. United States*,
271 F. Supp. 2d 345 (D. Mass. 2003)....................26

*Loveladies Harbor, Inc. v. United States*,
27 F.3d 1545 (Fed. Cir. 1994)....................18

*Matson Nav. Co. v. United States*,
284 U.S. 352 (1932)....................14

*Ministerio Roca Solida v. United States*,
778 F.3d 1351 (Fed. Cir. 2015)....................27

*mNG Bio, LLC v. United States*,
No. 26-12, Dkt. No. 13 (Fed. Cl. June 12, 2026)....................1, 13, 23, 24, 25

*Nat'l Cored Forgings Co. v. United States*,
132 Ct. Cl. 11 (1955) ..........15

*Nextec Applications, Inc. v. United States*,
114 Fed. Cl. 532 (2014) ..........9, 14, 17, 18, 24

*Nycal Offshore Dev. Corp. v. United States*,
148 Fed. Cl. 1 (2020) ..........14, 21

*The Ouachita Cotton*,
73 U.S. 521 (1867)..........20

*Peacock v. Thomas*,
516 U.S. 349 (1996)..........22

*Peck v. Jenness*,
48 U.S. 612 (1849)..........24

*Riggs v. Johnson Cnty.*,
73 U.S. 166 (1868)..........22

*Rocovich v. United States*,
933 F.2d 991 (Fed. Cir. 1991)..........8

*Shockley v. Arcan, Inc.*,
248 F.3d 1349 (Fed. Cir. 2001)..........25

*Taylor v. United States*,
128 Fed. Cl. 635 (2016) ..........28

*Tindall v. United States*,
No. 2023-1139, 2023 WL 2881312 (Fed. Cir. Apr. 11, 2023) ..........23

*Trusted Integration, Inc. v. United States*,
659 F.3d 1159 (Fed. Cir. 2011)..........8, 10, 11, 12

*United States v. Tohono O'Odham Nation*,
563 U.S. 307 (2011).......... *passim*

*Young v. United States*,
60 Fed. Cl. 418 (2004) ..........19, 20

*Zaccari v. United States*,
142 Fed. Cl. 456 (2019) ..........9, 10, 11, 16

*Zoltek Corp. v. United States*,
672 F.3d 1309 (Fed. Cir. 2012)..........10

*ZSR Patlayici Sanayi A.S. v. Sarac Distribs. LLC*,
No. 19-cv-864, 2020 WL 3895709 (M.D. Fla. July 10, 2020) .....26

**STATUTES AND RULES**

28 U.S.C. § 1498 ..... *passim*

28 U.S.C. § 1500 ..... *passim*

35 U.S.C. § 271 ..... 3, 12, 13

Ct. Fed. Cl. Rule 12(b)(1) ..... 8

Fed. Cir. R. 47.5 ..... 13

Fed. R. Civ. P. 12 ..... 26

Fed. R. Civ. P. 12(b)(2) ..... 26

Fed. R. Civ. P. 56(a) ..... 26

**OTHER AUTHORITIES**

11 Oxford English Dictionary 468 (2d ed. 1989) ..... 20

Black's Law Dictionary 1154 (7th ed. 1999) ..... 20

Black's Law Dictionary 1248 (9th ed. 2009) ..... 19, 20

A Dictionary of the English Language (1st ed. 1828) ..... 21

Noah Webster, Compendious Dictionary of the English Language 280 (1806) ..... 21

Restatement (Second) of Agency (1958) ..... 15

Webster's Third New International Dictionary 1669 (1976) ..... 20

William A. Wheeler, A Dictionary of the English Language 528 (1868) ..... 20

## INTRODUCTION

After spending three years trying to dismiss Plaintiffs' patent infringement claims against Moderna—demanding that they instead be brought against the government before this Court—the government now reverses course. At literally the same time it urges the Federal Circuit to send Plaintiffs' claims here for adjudication pursuant to 28 U.S.C. § 1498, it asks this Court to dismiss them so the statute of limitations will bar Plaintiffs from any redress for Moderna's admitted infringement of Plaintiffs' valid patents (all, of course, without advising the Federal Circuit that is the government's position).

The pretext for this maneuver is 28 U.S.C. § 1500, which bars jurisdiction in this Court where the same claims are pending against the United States or its agents in another court. But § 1500 applies only if (1) a party asserts the "same claim" as it did in a prior case, (2) the prior claim is against the United States or its agents, and (3) the prior case is "pending" at the time of filing. All three requirements must be satisfied to invoke § 1500. None are met here. And each is an independent basis to deny the government's motion.

***First***, Plaintiffs' claims against Moderna and the government are not the "same claim," including because they rest on contradictory factual findings. Plaintiffs' claims against Moderna require a finding that Moderna was ***not*** acting "for the government" such that § 1498 does not apply; Plaintiffs' claims against the government require the opposite—that Moderna ***was*** acting "for the government." The government is aware of—but, concerningly, does not acknowledge or address—multiple cases interpreting the "same claim" requirement in this manner that contradicts its motion. It also neglects to mention Judge Bruggink's recent denial of its similar motion to dismiss—based on both § 1500 and § 1498—patent infringement claims against the identical accused Moderna COVID-19 vaccine. *See mNG Bio, LLC v. United States*, No. 26-12, Dkt. No. 13 (Fed. Cl. June 12, 2026).

***Second***, Plaintiffs' district court claims were against only Moderna, not the United States or its agents, as § 1500 requires. Moderna was the government's contractor for purposes of manufacturing and providing the COVID-19 vaccine doses at issue here. Under a long line of decisions—which, again, the government conspicuously ignores—claims against government contractors do not trigger § 1500.

***Third***, Plaintiffs' claims against Moderna were not "pending" when Plaintiffs filed their Complaint. As precedent and the plain text reflect, a claim is only "pending" when it remains undecided. Once the district court entered final judgment on March 4, 2026—before Moderna filed its notice of appeal on March 24—Plaintiffs' claims against Moderna were no longer undecided. That ends the inquiry. The government attempts to elide this infirmity by labeling the consent judgment "active." Dkt. No. 8 ("Mot.") at 2, 11, 13, 19, 21. Whatever that means, ending a district court proceeding by consent judgment is no different than ending it with a jury verdict or dismissal order. Regardless of the procedural mechanism, the law is clear that when Plaintiffs filed their case in this Court, there was no open proceeding in any other court. That fact conclusively forecloses § 1500's application.

Perhaps recognizing that § 1500 does not apply to this case, the government spends the bulk of its motion on policy concerns that are both misplaced and not a proper basis to rewrite statutory text. Contrary to the government's accusation, Plaintiffs do not seek double recovery for infringing doses, and longstanding patent law doctrines prevent that outcome whether § 1500 applies or not. What the government is really seeking is to have this Court prematurely adjudicate facts concerning the scope of damages in a manner that would potentially leave Plaintiffs with ***no*** compensation for Moderna's admitted infringement if the Federal Circuit later adopts the government's position that § 1498 applies to the disputed doses. That cannot be—and is not—the

law. The government concedes this Court has jurisdiction over Plaintiffs' claims relating to the government's purchase of Moderna's COVID-19 vaccine, disputing only a particular subset of doses. Because Plaintiffs' claims will proceed regardless, the only practical issue is the scope of any reasonable and entire compensation, which settled patent law doctrines and ordinary summary judgment or trial procedures can address.

There is no reason for the Court to rewrite § 1500 and ignore consistent precedent, as the government urges. The motion should be denied.

## QUESTION PRESENTED

Whether 28 U.S.C. § 1500 bars jurisdiction for claims brought in this Court under 28 U.S.C. § 1498, when separate claims were brought in district court under 35 U.S.C. § 271 against a private defendant that acted as a contractor rather than an agent, and the claims in district court were not the subject of any pending litigation or appeal when the Complaint was filed in this Court.

## STATEMENT OF THE CASE

### A. Plaintiffs' Lipid Nanoparticle Technology and its unlicensed use by Moderna during the COVID-19 pandemic.

Plaintiffs Arbutus Biopharma Corporation and Genevant Sciences GmbH are the owner and exclusive rights holder (in the relevant field) of groundbreaking lipid nanoparticle ("LNP") technology—the innovation that made Moderna's COVID-19 vaccine possible. Dkt. No. 1 ("Compl.") ¶¶ 1–2, 15. Scientists at Arbutus's predecessor companies undertook pioneering research to solve the fundamental challenge of RNA-based medicine: protecting fragile RNA molecules from degradation and enabling them to enter target cells. *Id.* ¶¶ 31–32. Their efforts resulted in LNP technology relying on fat-like molecules called lipids that encapsulate and protect nucleic acids like mRNA. *Id.* ¶ 32. The Patent Office awarded Plaintiffs patents covering this technology. *Id.* ¶ 35.

Since shortly after its inception in 2010, Moderna has used Plaintiffs' LNP technology without a license. Compl. ¶¶ 88, 103, 120, 140, 154. Moderna first obtained unauthorized, limited sublicenses. *Id.* Then, after a court found Moderna's licensor had no right to grant such sublicenses, Moderna unsuccessfully sought to invalidate Arbutus's LNP-related patents through *inter partes* review. *Id.* The Patent Trial and Appeal Board—an administrative tribunal within the Department of Commerce—and the Federal Circuit rejected Moderna's efforts. *Id.* ¶ 43. But Moderna still incorporated Plaintiffs' LNP technology into its mRNA products. *Id.* ¶¶ 52–58. Despite knowing it infringed Plaintiffs' patents without a license, Moderna manufactured, sold, and used its COVID-19 vaccine using Plaintiffs' patented LNP technology. *Id.* ¶¶ 69, 71.

Within four days of scientists' publication of the genetic sequence of the virus that caused COVID-19, Moderna began developing a COVID-19 vaccine relying on Plaintiffs' LNP technology. *Id.* ¶¶ 45–47. In August 2020, the United States and Moderna entered into Contract No. W911QY-20-C-100 (the "C-100 Contract") for up to 500 million doses. *Id.* ¶ 70. The C-100 Contract explained that, acting "[i]ndependently, and not as an agent of the USG . . . the contractor [Moderna] shall provide all necessary services, qualified personnel, material, equipment and facilities . . . to perform the specific tasks set forth" in the Contract. *Arbutus Biopharma Corp. v. Moderna, Inc.*, No. 22-252, Dkt. No. 17-1, Ex. A at 19–20 (D. Del. May 6, 2022). Of the roughly 500 million doses sold under the Contract, only 6,244,340—around 1.25%—went directly to United States Government employees (the "Government Employee Doses"). Compl. ¶ 12.

**B. Plaintiffs' district court litigation.**

In February 2022, Plaintiffs filed a patent infringement action against Moderna in the United States District Court for the District of Delaware (the "Moderna Action"). Compl. ¶ 7; *Arbutus v. Moderna*, No. 22-252, Dkt. No. 1 (D. Del. Feb. 28, 2022).

Moderna moved to dismiss, arguing Plaintiffs' claims for doses sold under the C-100

Contract could proceed only in the Court of Federal Claims pursuant to § 1498. Compl. ¶ 72. Plaintiffs opposed. On November 2, 2022, the district court denied Moderna's motion, concluding that factual issues remained as to whether Moderna's infringement was done "for the Government" and with the "authorization and consent" of the United States. Compl. ¶ 72; *Arbutus v. Moderna*, 638 F. Supp. 3d 397 (D. Del. 2022).

On February 14, 2023, the United States filed a Statement of Interest, arguing Plaintiffs were "limited to pursuing a claim against the United States in the Court of Federal Claims pursuant to 28 U.S.C. § 1498," as the government had "relieve[d] Moderna of any liability for patent infringement resulting [from] performance of the [C-100] Contract and [transferred] to the United States any liability for the manufacture or use of the inventions claimed in the Patents-in-Suit." *Arbutus v. Moderna*, No. 22-252, Dkt. No. 49 at 2 (D. Del. Feb. 14, 2023). The district court reaffirmed its prior order, denying Moderna's motion, including due to remaining factual disputes. *Id.*, Dkt. No. 64 (D. Del. Mar. 10, 2023).

The parties subsequently cross-moved for summary judgment on the applicability of § 1498. On February 2, 2026, the Delaware district court granted Moderna's motion that § 1498 applied to the Government Employee Doses and granted Plaintiffs' motion that § 1498 did not apply to any of the other C-100 doses. Compl. ¶ 74.

On March 3, 2026, Plaintiffs and Moderna entered into a settlement agreement resolving all claims in the Moderna Action. *See* Mot. Ex. 1. The parties agreed to submit a consent judgment that would resolve all claims in district court and would provide for a release and dismissal to Moderna, while reserving Moderna's right to appeal the district court's § 1498 summary judgment decision. Mot. Ex. 1 § 2. In exchange, Moderna agreed to pay Plaintiffs a lump sum of $950 million. *Id.* § 3.1. Moderna also agreed to a separate "Contingent Lump Sum Payment" of $1.3

billion, which Plaintiffs would receive if Moderna did not file a notice of appeal by the applicable deadline or "[i]f there is a Final Non-Appealable Judgment affirming the § 1498 Judgment in its entirety, or otherwise holding that § 1498(a) does not bar Genevant/Arbutus' claim against Moderna." *Id.* § 3.2.

The same day the parties executed their settlement agreement, they submitted a proposed consent judgment to the district court. *Arbutus v. Moderna*, No. 22-252, Dkt. No. 757 (D. Del. Mar. 3, 2026). The proposed consent judgment was separate from, and did not incorporate, the terms of the settlement agreement into the judgment. *Id.*

On March 4, 2026, the district court entered a Consent Judgment resolving the Moderna Action. Compl. ¶ 75; *Arbutus v. Moderna*, No. 22-252, Dkt. No. 758 (D. Del. Mar. 4, 2026). The court entered final judgment of infringement and no invalidity as to four of the patents Plaintiffs assert here. *Id.* With respect to § 1498, the court entered final judgment in Moderna's favor for the Government Employee Doses, requiring that they be addressed in this Court, and entered final judgment against Moderna for all other doses. *Id.* The parties waived all rights to appeal, except that Moderna reserved the right to appeal the § 1498 determination. *Id.* Upon entering the consent judgment, the district court closed the case. *Arbutus v. Moderna*, No. 22-252 (D. Del. Mar. 4, 2026) (docket showing case terminated as of March 4, 2026).

**C. Plaintiffs' Complaint in this Court.**

On March 19, 2026—after all litigation in the Moderna Action had been resolved by entry of the Consent Judgment and before any notice of appeal had been filed—Plaintiffs filed their Complaint in this Court. Compl. ¶¶ 1, 13; *see Arbutus v. Moderna*, No. 22-252, Dkt. No. 761 (D. Del. Mar. 24, 2026) (Moderna Notice of Appeal).

The Complaint seeks reasonable and entire compensation for the Government Employee Doses—the approximately 6.2 million doses that went directly to United States Government

employees—and preserves Plaintiffs' right to seek damages from the United States for any doses that are ultimately deemed subject to 28 U.S.C. § 1498. Compl. ¶¶ 12–13.

As the Complaint explains, Plaintiffs filed at that time "in light of the positions that the United States and Moderna have taken in the Moderna Action, which may not be finally resolved on appeal before the time to file this Complaint has expired." Compl. ¶ 13. Plaintiffs further pled that "[t]he Moderna Action does not alter this Court's jurisdiction to hear this case, as [at the time of filing,] the Delaware district court ha[d] entered judgment in that action, there [wa]s no pending appeal from that action, and the United States was not a defendant in that action." Compl. ¶ 23.

**D. Moderna's Federal Circuit appeal.**

On March 24, 2026—five days ***after*** Plaintiffs filed their Complaint in this case—Moderna filed a Notice of Appeal to the Federal Circuit, appealing the district court's determination that § 1498 does not apply to the non-Government Employee Doses. *Arbutus v. Moderna*, No. 22-252, Dkt. No. 761 (D. Del. Mar. 24, 2026). The Federal Circuit docketed the appeal on March 30, 2026. *Arbutus v. Moderna*, No. 26-1581, Dkt. No. 1 (Fed. Cir. March 30, 2026). The government voluntarily filed an amicus brief in the Federal Circuit, reaffirming its position that § 1498 applies to all C-100 Contract doses, and asserting that "the Court of Federal Claims [is] the only appropriate court" for all claims related to those doses to be heard. *Arbutus v. Moderna*, No. 26-1581, Dkt. No. 29, at 11 (Fed. Cir. June 19, 2026). The government did not disclose to the Federal Circuit that just weeks later, it would move in this Court to dismiss those very claims with prejudice, leaving Plaintiffs wholly without redress for Moderna's admitted infringement if the Federal Circuit adopts the government's position.

## LEGAL STANDARD

When reviewing a complaint to determine its jurisdiction over a plaintiff's claims, this Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff must establish jurisdiction by a preponderance of the evidence. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). In evaluating the propriety of jurisdiction, the Court may look to evidence outside the pleadings. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991).

## ARGUMENT

The government's motion under RCFC 12(b)(1) should be denied. It rests on three fundamental errors in applying 28 U.S.C. § 1500, any one of which is sufficient to deny the motion. And the novel extensions and amorphous policy concerns that the government raises are not a basis to depart from the statute's clear text.

### I. Section 1500 does not apply to Plaintiffs' claims.

Section 1500 does not apply to Plaintiffs' claims. The statute provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

"To determine whether § 1500 applies, and therefore strips this court of jurisdiction, a court must make two inquiries: (1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Leebcor Servs., LLC v. United States*, 171 Fed. Cl. 14, 18 (2024) (internal alteration omitted) (quoting *Brandt v. United*

*States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013)). "If the answer to either of these questions is negative, then the Court of Federal Claims retains jurisdiction." *Id.* (quoting *Brandt*, 710 F.3d at 1374). In addition, even if those two elements are satisfied, § 1500 also requires that "the defendant in both lawsuits must be the United States or a person or entity acting or professing to act directly or indirectly under the authority of the United States." *Nextec Applications, Inc. v. United States*, 114 Fed. Cl. 532, 537 (2014) (citing *Brandt*, 710 F.3d at 1373–74). Because each of these three requirements is absent, § 1500 does not apply.

**A. Plaintiffs' claims here and the claims in the Moderna Action are not the "same claim."**

**1. Plaintiffs' claims against Moderna in district court require different, and contradictory, proof compared to their claims here.**

The government's effort to establish that Plaintiffs' claims in this Court and the Moderna Action are the "same claim" rests on a fundamental omission: It ignores a long line of cases from judges of this Court repeatedly holding that infringement claims against private contractors in district court are not the "same claim" as claims against the United States because they require different, and contradictory, proof. *See Healthestate, LLC v. United States*, 149 Fed. Cl. 244, 249–250 (2020); *Zaccari v. United States*, 142 Fed. Cl. 456, 461 (2019); *d'Abrera v. United States*, 78 Fed. Cl. 51, 59 (2007). The government fails to cite—let alone distinguish—this established rule.

A claim brought elsewhere is the "same claim" as one brought in the Court of Federal Claims only if based on "substantially the same operative facts." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). "[W]hen analyzing the operative facts for claims which possibly might trigger § 1500," this Court must "focus[] on the different types of conduct that were legally operative to support each type of claim." *Zaccari*, 142 Fed. Cl. at 461.

Plaintiffs' claims here and in the Moderna Action require proof of contrary legally operative facts. In the Moderna Action, the court must find Moderna's C-100 Contract sales ***were***

***not*** "for the Government." *See Adv. Software Design Corp. v. Fed. Rsrv. Bank of St. Louis*, 583 F.3d 1371, 1376–78 (Fed. Cir. 2009). By contrast, Plaintiffs must prove the opposite to bring their § 1498 claims in this Court: that the C-100 Contract sales ***were*** "for the Government." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1327 (Fed. Cir. 2012). Because the operative facts Plaintiffs must prove to prevail in each court are "critically different," they are not the "same claim." *d'Abrera*, 78 Fed. Cl. at 59.

*Zaccari*, which the government ignores, confirms this conclusion. There, the court held that a pending district court action against private contractors did not bar a § 1498 claim in the Court of Federal Claims because the claims did not rest on the same operative facts: the contractor suits turned on private conduct, while the § 1498 claim turned on whether the accused use was by or for the Government and with its authorization or consent. *Zaccari*, 142 Fed. Cl. at 459–63. Because these elements of § 1498 would establish an infringement claim against the government in the Court of Federal Claims, but avoid an infringement claim against the private entity in district court, the facts "legally operative for establishing the claim" are not "based on substantially the same operative facts." *Id.* at 463 (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011), and *Tohono O'Odham Nation*, 563 U.S. at 317).[1] That reasoning forecloses the government's position. Parallel allegations against private parties do not trigger § 1500 because contractor liability and government liability depend on different predicates and different facts. *Id.* at 462–63.

*d'Abrera*, which the government also ignores, is in accord. There, the court reasoned that the § 1498(b) claims brought in the Court of Federal Claims "contain[ed] material factual

[1] While *Zaccari* involved copyright infringement claims under § 1498(b), it considered "closely related" caselaw concerning "patent infringement claims" under § 1498(a). *Id.* at 462.

allegations ***that are in direct opposition*** with the claims . . . made in the district court." 78 Fed. Cl. at 59 (emphasis added). The district court claims "relied on [the personnel's] status as a volunteer to aver that he, but not the Smithsonian, had 'engaged in direct infringement.'" *Id.* The claims brought in the Court of Federal Claims alleged the individual "was acting with the authority of the Smithsonian." *Id.* "Thus, a material difference existed in the alleged operative facts such that the . . . claims plaintiffs brought in district court and this court were not the same for purposes of Section 1500." *Id.*

Federal Circuit precedent supports this approach. In *Trusted Integration*, that court concluded that § 1500 did not bar one of the plaintiffs' claims, because it required proof of contrary conduct to the district court claims. 659 F.3d at 1168. The claim in the Court of Federal Claims alleged that the government had violated a license agreement by accessing and then ***using a software program*** for an impermissible purpose. *Id.* By contrast, the district court complaint alleged that the government had breached its duties ***by declining to use*** the software. *Id.* Because these allegations were inconsistent, § 1500 did not apply. *Id.* at 1171.

Just as in *Zaccari*, *d'Abrera*, and *Trusted Integration*, the operative facts that Plaintiffs must prove (or disprove) in the Moderna Action and in this Court are contradictory. Thus, the claims do not rely on the same "operative facts" and are not the "same claim." That alone is basis to deny the government's motion. *See Healthestate*, 149 Fed. Cl. at 249-250; *Zaccari*, 142 Fed. Cl. at 461; *d'Abrera*, 78 Fed. Cl. at 59.

**2. Historical res judicata principles confirm that Plaintiffs' claims are not the same claim.**

The conclusion that two claims that require proof of contrary facts are not the same claim is "consistent with the principles of res judicata" that were applied around the passage of § 1500's predecessor, which the Federal Circuit has used to "confirm" its "operative facts" analysis.

*Trusted Integration*, 659 F.3d at 1168–69, 1170 n.5; *see also Acetris Health, LLC v. United States*, 138 Fed. Cl. 43, 59 n.15 (2018), *aff'd in relevant part* 949 F.3d 719, 729–30 (Fed. Cir. 2020). When § 1500's predecessor was passed, there were two commonplace tests for evaluating whether two claims were the same: the "act or contract test" and the "evidence test." *Tohono O'Odham Nation*, 563 U.S. at 315–16; *Trusted Integration*, 659 F.3d at 1168–69. Both confirm that Plaintiffs' claims are not the same claim.

Under the "evidence test," two suits involve the same claim if "the same evidence support[s] and establish[es] both the present and the former cause of action." *Trusted Integration*, 659 F.3d at 1169; *Acetris Health*, 949 F.3d at 730. This evidence test is not met here, because the evidence necessary to establish Plaintiffs' claims in this Court "would not both support ***and*** establish the district court counts." *Trusted Integration*, 659 F.3d at 1169. To the contrary, the necessary evidence here—that Moderna acted for the government and with the government's authorization or consent—would defeat Plaintiffs' claims there.

Under the "act or contract test," two suits must "immediately arise out of one and the same act or contract" to be the same claim." *Trusted Integration*, 659 F.3d at 1169 (quoting *Tohono O'Odham Nation*, 563 U.S. at 316); *Acetris Health*, 949 F.3d at 730. This test is also not met here, because claims in the separate courts concern different acts. Plaintiffs' claims here do not "immediately arise" out of the acts required in district court under § 271; Plaintiffs' claims here under § 1498 concern whether that infringement was "for the Government" and with its authorization or consent. These are additional and different acts, not "one and the same." *Trusted Integration*, 659 F.3d at 1169. These tests therefore confirm that the "same claim" rule does not apply in this case.

### 3. The statements the government points to from Plaintiffs' pleadings do not render Plaintiffs' claims the "same claim."

Rather than address the relevant caselaw, the government simply points to the ongoing appeal from the district court's judgment and Plaintiffs' explanation that they filed their Complaint to avoid operation of the statute of limitations. *See* Mot. at 20–21 (citing Compl. ¶ 13). While Plaintiffs continue to urge affirmance of the district court's decision and designated this case as a Related Case (as Federal Circuit Rule 47.5 requires), Plaintiffs have not taken inconsistent positions. Plaintiffs maintain that damages for Moderna's infringement for the non-Government Employee Doses were properly assessed in the district court; but Plaintiffs filed here simply to "preserve their right to seek damages from the United States, if necessary, prior to the running of any applicable statute of limitations for any doses sold pursuant to the C-100 Contract that are ultimately deemed to be subject to 28 U.S.C. § 1498(a)." Compl. ¶ 13.

More fundamentally, however, even ***were*** Plaintiffs' arguments inconsistent (they are not), that is not a basis for dismissal, as Judge Bruggink recently held in rejecting the government's similar motion in *mNG Bio*, No. 26-12, Dkt. No. 13 at 5–6 (Fed. Cl. June 12, 2026).[2] Judge Bruggink held that mNG Bio's allegations that § 1498 applied, "made in the alternative" like Plaintiffs' assertions here, "are not inherently contradicted by the plaintiff's express reservation that Moderna may be liable for the acts of infringement." *Id.*

Certainly, Plaintiffs' claims in the district court and here are related, in that both concern Moderna's patent infringement. But, in the Moderna Action, Plaintiffs brought claims under 35 U.S.C. § 271. *Arbutus v. Moderna*, No. 22-252, Dkt. No. 1, at 49 (Prayer for Relief ¶ A) (D. Del. Feb. 28, 2022). Here, Plaintiffs bring claims under 28 U.S.C. § 1498. Dkt. No. 1, at 49 (Prayer

---

[2] The government has filed a motion to certify this order for interlocutory appeal. *See id.*, Dkt. No. 21 (Aug. 11, 2026). mNG Bio's response to the government's motion is due August 25, 2026.

for Relief ¶¶ A–B). "Although related, claims for relief under different statutes related to separate alleged violations of law are neither 'equal' nor 'nearly identical lawsuit[s]' as each draws on distinct facts relevant to the alleged violation of law." *Leebcor*, 171 Fed. Cl. at 30 (citation omitted); *Nycal Offshore Dev. Corp. v. United States*, 148 Fed. Cl. 1, 18 n.9 (2020) (noting that "under § 1500, a 'process' must equal a previously filed 'cause of action' in another court"). For this reason alone, the government's motion should be denied.

**B. Plaintiffs' claims in the Moderna Action were against private contractors, not the government or its agents.**

The government's effort to shoehorn this case into § 1500 fails for another independent reason: the district court Moderna Action was not "against the United States or any person . . . acting or professing to act, directly or indirectly under the authority of the United States," as § 1500 requires.

Plaintiffs' Complaint in this Court identifies the Defendant as "the United States, acting through its various agencies, including but not limited to the Department of Defense ('DOD') and the Department of Health and Human Services ('HHS')." Compl. ¶ 18. By contrast, Plaintiffs' Complaint in the Moderna Action identified as defendants "Moderna, Inc. . . . a corporation organized and existing under the laws of the State of Delaware," and its wholly owned subsidiary, ModernaTX, Inc. *Arbutus v. Moderna*, No. 22-252, Dkt. No. 1 ¶¶ 12–13 (D. Del. Feb. 28, 2022).

Moderna was not acting "under the authority of the United States" when it engaged in the infringement here. In the context of § 1500, an individual is acting "under the authority of the United States" when acting as an "agent of the government," such as a government officer, *Matson Nav. Co. v. United States*, 284 U.S. 352, 355–56 (1932); *Tohono O'Odham Nation*, 563 U.S. at 312, or as government proxies, *see Nextec*, 114 Fed. Cl. at 536 ("[Section 1500] prevents a plaintiff from pursuing what is essentially the same case in multiple jurisdictions against the United States

or its proxy."); *Healthestate*, 149 Fed. Cl. at 254–55; *d'Abrera*, 78 Fed. Cl. at 59 n.14 (looking to Restatement (Second) of Agency (1958) to determine whether private contractor's activities would "rise to the level of agency").

Moderna was not acting as a government agent or proxy when performing under the C-100 Contract. "Looking to the plain language and history of § 1500, a private entity does not become a government proxy merely by performing under a contract with the Government." *Healthestate*, 149 Fed. Cl. at 250. Instead, to be classified as a "government proxy," a party's role must be incidental to some formal grant of power found in the Constitution, the United States Code and its authorized regulations, or some other proclamation carrying the force of federal law. *Id.* Moderna had no such authority here. While the government contends that Moderna was acting with the government's "authorization and consent," *see* Compl. ¶¶ 22, 70; Mot. at 2, the C-100 Contract provides explicitly that it establishes no agency relationship, stating that "[i]ndependently, and ***not as an agent of the USG*** . . . the Contractor shall provide all necessary services, qualified personnel, material, equipment and facilities . . . to perform the specific tasks set forth" in the Contract. *Arbutus v. Moderna*, No. 22-252, Dkt. No. 17-1, Ex. A at 19–20 (D. Del. May 6, 2022).

Consistent with the language in the C-100 Contract, courts uniformly hold that private entities acting pursuant to government contracts are not government agents, proxies, or entities acting under the authority of the United States. In *Healthestate*, the court reasoned that claims against a government contractor defendant in state court did not trigger § 1500, because the state court claims were against the defendant in its corporate capacity performing under a government contract. 149 Fed. Cl. at 254–55, 257. In other cases, this Court's predecessor held that § 1500 applies to claims against quasi-governmental entities when brought against them in their quasi-governmental capacity "as an agent of the United States," not in their contractor capacity. *Nat'l*

*Cored Forgings Co. v. United States*, 132 Ct. Cl. 11, 19 (1955); *First Nat'l S.S. Co. v. United States*, 90 Ct. Cl. 632, 634 (1940).

In *Zaccari*, the court acknowledged that it is "unusual that a suit in a district court brought against a business entity, such as a corporation or a limited liability company, would be identified as the trigger for a § 1500 challenge." 142 Fed. Cl. at 462. There, the government "failed to cite to even one case where a suit brought solely against a private party was held to trigger the jurisdictional bar found in § 1500." *Id.* (rejecting government's argument that § 1500 extends to any contractor acting with "authorization and consent"). The government doubles down on that fatal deficiency here, again failing to cite a single case holding that § 1500 bars claims against the government when a prior claim is against a private contractor. Indeed, the government ignores each and every case holding to the contrary. Because Moderna was acting as a contractor, and not as a government official or agent, § 1500 does not apply.

While ignoring all of the precedent on point, the government brazenly asserts there cannot be "any dispute" that Plaintiffs' claims against Moderna "were against defendants who were 'acting or professing to act, directly or indirectly, under the authority of the United States.'" Mot. at 21. But the cases the government cites provide no support for its position. In *Tohono O'Odham Nation*, 563 U.S. at 311–312, the Supreme Court confirmed that § 1500 was enacted to apply to claims against government officers, not private parties. The Court acknowledged that § 1500 applies when a prior claim is "pending against the United States or its agents," explaining the history of § 1500's passage to curb duplicate lawsuits brought by Confederate residents against the United States in the Court of Claims "while at the same time suing ***federal officials*** in other courts." *Id.* at 311–12. *Tohono O'Odham Nation* provides no basis to expand § 1500 to cover private contractors.

The government also asserts that *Ensign-Bickford Aerospace & Defense Co. v. United States*, 118 Fed. Cl. 363, 369 (2014), and *Croydon Co. v. Unique Furnishings, Ltd.*, 831 F. Supp. 480, 489 (E.D.N.C. 1993), acknowledge that "private defendants professing to act as proxies for the government fall within § 1500." Mot. at 21. That may be true, but neither case supports viewing a ***government contractor*** like Moderna as such a proxy. Indeed, in *Ensign-Bickford*, the court held that § 1500 did not bar a § 1498 patent infringement action, notwithstanding pending patent litigation against the private contractor who had made, used, or sold goods pursuant to government contracts. 118 Fed. Cl. at 366, 369. The court concluded that a cause of action against a private-party government contractor "was not against the United States or a person acting or professing to act under the authority of the United States in respect to that cause of action." *Id.* at 369. And in *Croydon*, while the district court reasoned, in the context of a transfer motion, that § 1500 might require the dismissal of patent infringement claims if the case were transferred to the Court of Federal Claims, the district court did not apply the Supreme Court's since-clarified test for assessing whether two claims are the "same claim," and did not assess whether the contractor was acting under the government's authority. *See* 831 F. Supp. at 489; *Tohono O'Odham Nation*, 563 U.S. at 317.

Thus, not only do the government's cited cases—*Tohono O'Odham Nation* and *Ensign-Bickford*—fail to hold that claims against government contractors are claims against individuals acting under the authority of the government, the cases in fact ***confirm*** that § 1500 does not bar claims in this Court when a prior claim was brought against a private government contractor.

The reason for this rule is clear. When a private party is the defendant, there is no risk of "duplicative litigation or double liability" for the government. *Nextec*, 114 Fed. Cl. at 538. "The United States [does] not have to defend itself and [does] not face any liability in district court for

patent infringement" in claims against a private party. *Id.* The same is true here; Plaintiffs' claims against Moderna did not subject the government to any risk of double liability or obligate it to defend multiple litigations. Whatever involvement the government has in the Moderna Action exists only because its affirmatively and voluntarily injected itself to assist Moderna by filing a Statement of Interest, which sought "to transfer to the United States any liability for the manufacture or use of the inventions claimed in the Patents-in-Suit." *Arbutus v. Moderna*, No. 22-252, Dkt. No. 49, at 2 (D. Del. Feb. 14, 2023). Where district court proceedings are against a private party, the concerns underlying § 1500 are simply not at play.

**C. Plaintiffs' claims in the Moderna Action were not pending when Plaintiffs filed their Complaint here.**

Section 1500 does not apply to Plaintiffs' complaint for yet another independent reason: As the government concedes, "'[t]he question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed." Mot. at 24 (quoting *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1548 (Fed. Cir. 1994)); *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (noting that jurisdiction "depends upon the state of things at the time of the action brought"). At that time—March 19, 2026—there was no claim pending in the Moderna Action under squarely applicable Federal Circuit precedent.

**1. Federal Circuit precedent confirms no claims are pending for purposes of § 1500 in the period between final judgment and notice of appeal.**

Plaintiffs filed their Complaint in this action during the period between entry of final judgment in district court (the March 4 entry of the consent judgment) and the March 24 filing of a notice of appeal. *See* Compl. ¶¶ 12–13; *Arbutus v. Moderna*, No. 22-252, Dkt. No. 761 (D. Del. Mar. 24, 2026). Under the Federal Circuit's decision in *Brandt*, there was thus no claim "pending in any other court" at that time, and § 1500 does not apply. 710 F.3d at 1380.

*Brandt* involved litigation with the government in Wyoming district court. *Id.* The district court entered judgment on March 2 and 4, 2009. *Id.* Brandt then filed his complaint in the Court of Federal Claims on April 28, 2009, while the appeal period was still running. *Id.* The Notice of Appeal of the district court judgment was filed the following day, on April 29, 2009. *Id.* The Federal Circuit held that § 1500 did not bar Brandt's claim in the Court of Federal Claims filed during the period between when "judgment is entered but before an appeal is filed." *Id.* at 1378–79. The court concluded that "pending" in § 1500 meant "remaining undecided; awaiting decision." *Id.* at 1378 (quoting Black's Law Dictionary 1248 (9th ed. 2009)). The court reasoned that reading the word "pending" in the statute, as the government does, "to include the time after judgment is entered but before an appeal is filed [would] read[] the words 'in any other court' out of the statute." *Id.* "[W]hen a district court enters judgment and that judgment becomes final, the case is closed on the court's docket," and when "a party files an appeal, a new case is opened on the Court of Appeals' docket." *Id.* "In other words, . . . there is a period of time when a case is not, as the statute requires, 'pending in any other court.'" *Id.* at 1379. The court thus held, "at the time Brandt filed the instant case, he had no 'suit or process against the United States' pending in any other court." *Id.* at 1380. Numerous cases have applied the same rule. *E.g.*, *Bolduc v. United States*, 72 Fed. Cl. 187, 196–97 (2006), *aff'd,* 248 F. App'x 162 (Fed. Cir. 2007); *Fire-Trol Holdings, LLC v. United States*, 65 Fed. Cl. 32, 33 n.4 (2005); *Young v. United States*, 60 Fed. Cl. 418, 424 n.9 (2004).

The present case aligns squarely with *Brandt*. The district court entered final judgment on March 4, 2026. *Arbutus v. Moderna*, No. 22-252, Dkt. No. 758 (D. Del. Mar. 4, 2026). At that point, Plaintiffs' case was "terminated" by order of the court. *Id.* at Docket Sheet ("Date Terminated: 03/04/2026"). Plaintiffs filed their Complaint here two weeks later, on March 19,

2026. Dkt. No. 1. Moderna filed its Notice of Appeal to the Federal Circuit the following week, on March 24, 2026. *Arbutus v. Moderna*, No. 22-252, Dkt. No. 761 (D. Del. Mar. 24, 2026). Because Plaintiffs' Complaint was filed during the interim period when there was no case ongoing in either the district court or the Federal Circuit, there was no claim "pending" in "any other court." *Brandt*, 710 F.3d at 1379. Section 1500 therefore does not apply.

#### 2. The government's effort to narrow *Brandt* contradicts the case and the text of § 1500.

Recognizing that the rule set forth in *Brandt* applies straightforwardly to preclude its motion to dismiss, the government attempts to cabin the rule and expand § 1500's application. The government seeks to limit *Brandt* to circumstances where a claim in another court has been "dismissed or denied." Mot. at 17. But that limitation is unmoored from either logic or the statute's text. A claim is no longer "pending" when it has reached final judgment, regardless of whether it has been granted, denied, dismissed, or otherwise finally resolved.

As *Brandt* explained, "Black's Law Dictionary defines 'pending' as 'remaining undecided; awaiting decision.'" 710 F.3d at 1378 (quoting Black's Law Dictionary 1248 (9th ed. 2009)). Similarly, in *Young*, 60 Fed. Cl. at 424 n.9, the court concluded that "[t]he meaning of the word 'pending,' when used as an adjective in the legal context, is plain and well-understood," referencing numerous sources from the passage of § 1500's predecessor. Those sources confirm that "pending" refers to matters that are "undecided." *See, e.g.*, Webster's Third New International Dictionary 1669 (1976) ("not yet decided: in continuance: in suspense"); Black's Law Dictionary 1154 (7th ed. 1999) ("[r]emaining undecided; awaiting decision"); William A. Wheeler, A Dictionary of the English Language 528 (1868) ("[r]emaining undecided; in suspense"); *The Ouachita Cotton*, 73 U.S. 521, 527 (1867) (using "still pending" and "awaiting adjudication" interchangeably); 11 Oxford English Dictionary 468 (2d ed. 1989). A dictionary that this Court

relied upon in *Nycal*, 148 Fed. Cl. at 12, as evidence of the passage-era understanding of § 1500, also defines the term "pending" as "remaining undecided." *See* A Dictionary of the English Language (1st ed. 1828); *see also* Noah Webster, Compendious Dictionary of the English Language 280 (1806) (defining "pending" as "depending, undecided, unsettled").

There was nothing "pending" or "undecided" about Plaintiffs' district court claims. They were fully adjudicated, which is why the district court entered final judgment and closed the case. *See Arbutus v. Moderna*, No. 22-252 (D. Del.) (showing case closed as of March 4, 2026). The notion that a closed case remains "pending" is, respectfully, as unprecedented as it is illogical. A claim resolved in Plaintiffs' favor is no less "decided" than one resolved against them. Once the district court entered final judgment—until Moderna noticed an appeal—Plaintiffs' claims did not "remain undecided," so they were not "pending," and § 1500 does not apply.

### 3. The Moderna Action was closed, not "active," when Plaintiffs filed their Complaint.

In addition to misconstruing *Brandt*, the government repeatedly characterizes the consent judgment that ended the Moderna Action as an "***active*** consent judgment" in an effort to create an apparent distinction between cases terminated by consent judgment and those terminated in any other manner. *See* Mot. at 2, 11, 13, 19, 21. No logic or law—much less the government's neologism of an "active consent judgment"—supports that distinction. "[C]onsent judgments have the same force and effect as judgments entered after a trial on the merits." *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989); *Jang v. Bos. Sci. Corp.*, 532 F.3d 1330, 1334 (Fed. Cir. 2008) (same standards apply to consent judgment as other judgments). Thus, when the district court entered judgment, the case was closed. *See Arbutus v. Moderna*, No. 22-252 (D. Del.). Contrary to the government's characterization, nothing remained "active" after the district court entered judgment. Whatever "active" means, it certainly does not describe a closed case.

The government points to the district court's retention of jurisdiction "for purposes of enforcement of the provisions of this Consent Judgment and Order." Mot. at 15 (quoting *Arbutus v. Moderna*, No. 22-252, Dkt. No. 758 (D. Del. Mar. 4, 2026)). But this provision is nothing more than a recognition of the district court's inherent power to enforce its judgments. Courts always retain such jurisdiction, irrespective of the procedural disposition of the action. *See Heartland By-Prods., Inc. v. United States*, 424 F.3d 1244, 1251 (Fed. Cir. 2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378–82 (1994). Without such jurisdiction to enforce its judgments (not only consent judgments), "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock v. Thomas*, 516 U.S. 349, 356–58 (1996) (quoting *Riggs v. Johnson Cnty.*, 73 U.S. 166, 187 (1868)). A court's retention of authority to enforce its judgment cannot be a basis to conclude that claims remain "pending"; otherwise, every action would remain "pending" indefinitely, even after entry of final judgment.

Because the Moderna Action was closed and no notice of appeal had been filed when Plaintiffs filed the Complaint in this action, § 1500 simply does not apply.

## II. The government offers no basis to depart from the plain text of § 1500 and precedent applying it.

Rather than address the elements of § 1500 and the cases applying it, the government spends the bulk of its motion urging novel extensions of the statute based on legally irrelevant factors and amorphous policy concerns about duplicative litigation. Those arguments are misplaced, unprecedented, and not a basis to depart from § 1500's plain text.

### A. The district court's conclusion that it had jurisdiction does not foreclose jurisdiction in this Court.

Attempting to avoid the clear legal standard governing § 1500's application, the government makes the novel argument that § 1500 applies whenever a prior court has exercised jurisdiction over a related claim. *See* Mot. at 12, 18–19. That is wrong and premised on a

misreading of this Court's decision in *Leebcor* and the cases relied upon there. *See* Mot. at 14–15. In *Leebcor*, this Court explained that "§ 1500 does not apply when the court of first filing did not have jurisdiction." 171 Fed. Cl. at 24; *see also Tindall v. United States*, No. 2023-1139, 2023 WL 2881312, at *4 (Fed. Cir. Apr. 11, 2023). The government reasons that "the clear corollary is that § 1500 does apply where a district court found it has jurisdiction." Mot. at 17 (emphasis omitted). But that corollary is not clear—it is nothing more than a logical fallacy. Just because a prior court's finding of jurisdiction is ***necessary*** to apply § 1500, does not mean such a finding is ***sufficient*** to apply § 1500. Indeed, in the government's own cited case, the court concluded that § 1500 does not apply even when there is no dispute that the prior court had jurisdiction over the relevant claims. *E.g.*, *Acetris Health*, 949 F.3d at 730 (cited at Mot. at 13). No case holds that the mere existence of jurisdiction in district court deprives the Court of jurisdiction here.

For the same reason, the government's repeated refrain that dismissal is proper because "this Court's jurisdiction over patent infringement actions pursuant to § 1498(a) is mutually exclusive to the district court's jurisdiction" is wrong. Mot. at 23; *see also id.* at 19 ("the exclusivity of remedy under § 1498 would preclude their Complaint against those same doses here"). Indeed, Judge Bruggink recently dispatched with this very logic when rejecting the government's parallel motion to dismiss in *mNG Bio v. United States*, No. 26-12, Dkt. No. 13 (Fed. Cl. June 12, 2026). In that case, which also concerns Moderna's COVID-19 vaccine patent infringement, the government argued the court had no jurisdiction "because mNG cannot maintain a claim [in the Court of Federal Claims] under section 1498(a) while simultaneously suing Moderna in a federal district court for the same infringement." *Id.* at 4. Judge Bruggink disagreed, explaining that while § 1498 is the exclusive remedy ***if*** its jurisdictional prerequisites are met, "[t]he fact that there is pending in district court a proceeding based on similar facts does not

preclude the suit" before this court. *Id.* at 5 (citing *Peck v. Jenness*, 48 U.S. 612, 625 (1849)). The same reasoning applies here.

**B. The government's policy concerns are misplaced because its motion only affects the quantum of damages.**

The government also raises the specter that, if Plaintiffs' claims are allowed to proceed, the government will face duplicative litigation, and patent holders might achieve double recoveries. *See* Mot. at 2–3, 20, 24. Those concerns are misplaced and ignore several established patent law doctrines that prevent such a result.

***First***, Plaintiffs' claims in this Court do not create a risk of duplicative litigation that the government must defend. As the government concedes, Plaintiffs' claims will proceed in this Court regardless of the outcome of its motion. *See* Mot. at 2. The only question affected by the government's motion is the number of doses for which the government owes reasonable and entire compensation. Thus, only the quantum of payment for Plaintiffs' claims—not the underlying entitlement to payment—could be affected by the government's motion.

Moreover, the government "did not have to defend itself and did not face any liability in district court for patent infringement." *Nextec*, 114 Fed. Cl. at 538. The government affirmatively and voluntarily injected itself into the Moderna Action to assist Moderna by filing a Statement of Interest in the district court and an amicus brief at the Federal Circuit. The government was not obligated to, and did not, defend against any claims. Thus, the government's concerns that it will be forced to defend itself in both actions ring hollow.

***Second***, there is no risk of a double recovery. As a threshold matter, Plaintiffs' Complaint makes clear that Plaintiffs are not pursuing a double recovery for Moderna's infringement. By filing here, Plaintiffs merely seek to preserve their right to pursue compensation for Moderna's infringement, whether it is Moderna or the government that is ultimately liable. *See* Compl. ¶ 13.

Parallel litigation against the United States and its contractor is common where, as here, some infringement was done for the government and some was not. *See Healthestate*, 149 Fed. Cl. at 255–56 (copyright infringement); *Ensign-Bickford*, 118 Fed. Cl. at 366–67 (patent infringement); *mNG Bio*, No. 26-12, Dkt. No. 13 (Fed. Cl. June 12, 2026) (patent infringement).

Settled doctrines prevent double recovery for a single act of infringement. The doctrine of satisfaction provides that an infringer is "liable for the full amount of damages (***up to a full single recovery***) suffered by the patentee." *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 501, 511 (1964). Thus, where a patentee has recovered full damages from an infringer's sales, the purchaser cannot be held liable for the same purchases. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 852 (Fed. Cir. 2006).

The doctrine of patent exhaustion also limits double recovery. *See Keeler v. Std. Folding Bed Co.*, 157 U.S. 659, 663 (1895) (noting patentees "are never entitled to but one royalty for a patented machine" (citation omitted)); *Helferich Pat. Licensing, LLC v. N.Y. Times Co.*, 778 F.3d 1293, 1305 (Fed. Cir. 2015); *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361 (Fed. Cir. 2013). Where applicable, these doctrines provide a basis to dispute liability or damages. *See Glenayre*, 443 F.3d at 852; *Keeler*, 157 U.S. at 663.

By contrast, the government's attempt to address the issues in a jurisdictional motion is improper and premature. Section 1500 addresses whether this Court shall "have jurisdiction of any ***claim***" pending against the government in another court. § 1500. And the government concedes that Plaintiffs' claims that the government is liable for Moderna's infringement "can jurisdictionally be before this Court." Mot. at 2. Unlike the government's motion, the claims do not divide the infringing doses between Government Employee doses and non-Government

Employee doses. Compl. ¶¶ 77–172. By focusing on the quantum of damages for each claim, rather than on the claims themselves, the government's motion "seek[s] dismissal of ***facts*** rather than ***claims***, which Rule 12 does not contemplate." *Limone v. United States*, 271 F. Supp. 2d 345, 364 (D. Mass. 2003); *see also ZSR Patlayici Sanayi A.S. v. Sarac Distribs. LLC*, No. 19-cv-864, 2020 WL 3895709, at *3 (M.D. Fla. July 10, 2020) (denying Rule 12(b)(2) motion because where the Court has "jurisdiction over the ***claims*** asserted," there is no basis to dismiss "portions of those claims").

If the government is concerned about double recovery, it will have its opportunity, at summary judgment or trial, to address the extent of infringement—and Plaintiffs' reasonable and entire compensation. "The Federal Rules of Civil Procedure explicitly allow for '[p]artial [s]ummary [j]udgment' and require parties to 'identif[y] each claim or defense—***or the part of each claim or defense***—on which summary judgment is sought.'" *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). The government's concerns about overlap with doses adjudicated elsewhere and double recovery can be readily addressed at that juncture, if warranted. But the government's "considerations of policy divorced from [§ 1500's] text and purpose [can]not override its meaning." *Tohono O'Odham Nation*, 563 U.S. at 317.

**C. Section 1500 is not a license to take advantage of the statute of limitations.**

The implication of the government's argument is to put Plaintiffs (and any party in their position) in an improper and irreconcilable bind. If the government had its way, Plaintiffs would be faced with a choice: cave to Moderna's and the government's position that § 1498 applies to vaccine sales that were used for non-governmental purposes despite several legal rulings to the contrary, or risk that the statute of limitations will run and leave Plaintiffs with no relief whatsoever by the time Moderna finishes litigating its appeal if the district court's holding were to be

reversed.[3] In urging this scenario, the government seeks to distort a statute intended to prevent double recoveries into a prohibition on plaintiffs receiving ***any*** recovery for Moderna's admitted infringement.

No law or logic compels this result. To be clear, in making this argument, Plaintiffs are not seeking to add an exception to § 1500 for the statute of limitations, as the government asserts. Mot. at 22. It is not Plaintiffs' position that the statute of limitations ***alone*** is a reason to allow this case to proceed. Rather, for the multiple clear reasons set forth above, Plaintiffs simply contend that the Court should apply § 1500 according to its plain text and precedent, in the face of the government's efforts to contort and rewrite it.

The government is also wrong when it claims that "this case presents unique circumstances not yet addressed in § 1500 jurisprudence" as an excuse for the departure it urges from the statute's plain text. Mot. at 13. As explained above, the very arguments the government makes here have been roundly rejected by the judges of the Court of Federal Claims and Federal Circuit. But even if this Court were to engage in the government's fiction that this case law magically disappeared, there still would be no basis to ***extend*** the statute beyond its plain text to cover this case. This Court and others have repeatedly criticized § 1500's modern applications, characterizing the statute as a "'[jurisdictional] trap for the unwary' with little remaining connection to its original public meaning." *Leebcor*, 171 Fed. Cl. at 32–33 (quoting *Def. Distrib. & Second Amend. Found. v. United States*, No. 23-849, 2024 WL 1092509, at *2 (Fed. Cl. Mar. 13, 2024) (Bruggink, J.)); *Taylor v. United States*, 128 Fed. Cl. 635, 639 n.2 (2016) (discussing "the unnecessity and inherent

[3] To be clear, Plaintiffs do not concede that the statute of limitations would bar their claims were Plaintiffs obligated to amend or refile their Complaint. *See Idaho Power Co. v. United States*, 105 Fed. Cl. 141, 146 (2012). *Contra* Mot. at 23 n.9. Indeed, were the statute of limitations to bar Plaintiffs' claims, it would raise serious constitutional questions. *See Ministerio Roca Solida v. United States*, 778 F.3d 1351, 1357 (Fed. Cir. 2015) (Taranto, J., concurring).

unfairness of this statute"). Given the resounding criticism of this statute, the Court certainly should not ***expand*** it, as the government requests, to cover Plaintiffs' claims here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the government's Partial Motion to Dismiss.

Dated: August 14, 2026

*/s/ Adam D. Harber*

Adam D. Harber*
David I. Berl (*pro hac vice*)
Matthew W. Lachman (*pro hac vice*)
Philip Haunschild
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
aharber@wc.com
dberl@wc.com
mlachman@wc.com
phaunschild@wc.com
*Attorneys for Plaintiff Genevant Sciences GmbH*
** Lead Attorney*

Eric C. Wiener
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-6080
ewiener@mofo.com
*Attorney for Plaintiff Arbutus Biopharma Corporation*

*Of Counsel:*

Shaun P. Mahaffy
Andrew L. Hoffman
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
*Attorneys for Plaintiff Genevant Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Jack Lane
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-6080
*Attorneys for Plaintiff Arbutus Biopharma Corporation*